# OCTOBER TERM, 1879.*

CHARLES L. ORTMANN, SIGMUND ROTHSCHILD, LOUIS HEID-
ELBACH AND PHILIP HEIDELBACH v. EGBERT G.
SOVEREIGN AND JOHN CAMPBELL.

*Replevin for timber taken away under a license—Estoppel.*

License to a grantee of land to cut and carry away the timber would
not prevent the licensor from maintaining replevin against one
who had purchased the timber from the licensee, where the latter
had paid nothing for the land and it was understood by all par-
ties that ownership should remain in the licensor until payment.

A license, like an estoppel, is limited to the fair understanding on
which the parties are at liberty to act; it does not give the
licensee a general authority to do what he pleases.

Error to Bay. Submitted Oct. 10. Decided Oct. 28.

REPLEVIN. Plaintiffs bring error.

*Wheeler & McKnight* for plaintiffs in error. A license
to cut timber given under the terms of a sale of the
lands is inoperative if the conditions are not performed,
and is no defense to an action of replevin for the tim-
ber against a third person who has purchased it, Cooley
on Torts, 305; *Mumford v. Whitney,* 15 Wend., 380;
*Freeman v. Headley,* 33 N. J., 523; *Walsh v. Taylor,* 39
Md., 592; it cannot give him any rights, *Carleton v.
Redington,* 21 N. H., 291; *Jackson v. Babcock,* 4 Johns.,
418; *Ruggles v. Lesure,* 24 Pick., 187.

*Luther Beckwith* for defendant in error Campbell.

A license or re-lease given by one tenant binds all. *Truesdail v. Ward,* 24 Mich., 134; *Morrill v. Mackman,* id., 282; *Wetherbee v. Green,* 22 Mich., 311; *Greeley v. Stilson,* 27 Mich., 157; *Pratt v. Ogden,* 34 N. Y., 20; *Baker v. Wheeler,* 8 Wend., 505; *Bradley v. Boynton,* 22 Me., 287; *Draper v. Williams,* 2 Mich., 536; *Austin v. Hall,* 13 Johns., 286; *Decker v. Livingston,* 15 Johns., 481; *Grossman v. Lauber,* 29 Ind., 621; 4 Wait's Actions, 180; all who unite to bring replevin must be entitled to possession, *Hunt v. Strew,* 33 Mich., 89.

COOLEY, J. This controversy concerns the title to certain logs cut by the defendant Sovereign and one Dease on lands belonging to the plaintiffs and sold to the defendant Campbell from whom the plaintiffs replevied them. The principal facts in the case are not in dispute but the parties differ on minor points.

The plaintiff Rothschild in 1877 resided in Detroit and the plaintiff Ortmann in East Saginaw. One of the other plaintiffs resided in Cincinnati and the other in New York. The four jointly owned pine lands in Michigan. In the fall of that year Ortmann, assuming to act for all, entered into negotiations with Sovereign to sel to him and Dease all the white pine timber then standing, lying or being on certain parcels of land in Bay county, and their negotiations ended in an agreement to sell at the gross price of $16,800. In payment they were to receive a note made by John Campbell & Co. for $3000, indorsed by the purchasers, and the notes of the purchasers for the remainder, the last of which was to fall due May 1, 1880. An agreement in writing, bearing date November 22, 1877, was drawn up—amended somewhat afterwards—among the provisions in which were the following: The logs cut and the lumber therefrom were to be and remain the property of the vendors until payment of the purchase price as stipulated therein; and the vendees were to pay for all the timber cut and removed five dollars per thousand feet, board measure,

for the numbers one and two logs, and three dollars per thousand feet, board measure, for the common logs, and the sums so paid were to be indorsed on the notes. This agreement was made at Bay City, Ortmann alone of the vendors being there, and it became necessary that he should send it to the other vendors for signature. ' He procured their signatures after a time, and the paper was signed by Sovereign also, but not by Dease. How far it embodied the final understanding of the parties is in dispute. It is conceded that Ortmann, Sovereign, Dease, and one McKay, acting for John Campbell & Co., on the eighth day of December following met at the office of Luther Beckwith in Bay City where their negotiations were further continued, and Ortmann was informed that three million feet of the logs were sold by Sovereign and Dease to John Campbell & Co. who were to pay as a part of the purchase price said note of $3000, and also make further payments to the plaintiffs, equal, together with the amount of said note, to five dollars per thousand feet of their purchase. A contract between Sovereign and Dease and John Campbell & Co. was entered into at this time, but dated November 22, 1877. According to its provisions one million feet of logs were to be delivered to Campbell & Co. at Bay City within ninety days, and two million feet in the spring of 1878. By this contract the sums to be paid by John Campbell & Co. to the plaintiffs were to be paid to Ortmann at East Saginaw monthly. Some of the terms of the original agreement between the vendors and Sovereign and Dease seem to have been modified at this time, but not in particulars requiring mention.

While the parties were thus together at Beckwith's and while the agreement of purchase remained unsigned it was talked over among them that the vendees desired to begin their operations in lumbering at once. Ortmann says he gave no consent to this, but the testimony seems to put beyond question the fact that it was understood all around that the terms of purchase were fully agreed

upon, and that while the contract awaited signature Sovereign and Dease could go on with their lumbering operations. Ortmann fully admits that this was to be done, and McKay, acting for John Campbell & Co., so understood it. Accordingly Sovereign & Dease commenced operations the very next day. It should be stated that at this time the vendees executed what purported to be an assignment of their contract of purchase to John Campbell & Co., so as to enable that firm to go on under it for their own protection, in case of any failure on the part of the vendees.

The contract between the vendors and vendees was never fully signed and duplicates were never delivered. To whose fault the failure was attributable was a mooted question on the trial. The three thousand dollar note of John Campbell & Co. was never delivered to the vendors, nor was any money paid to them. Sovereign and Dease cut a large quantity of logs,—near, two million feet in all,—of which about 300,000 feet were delivered to John Campbell & Co., and the rest were in the woods when this suit was instituted. Campbell & Co. made to Sovereign and Dease considerable payments on the logs delivered to them, and converted some of the logs into lumber. The plaintiffs gave evidence tending to show that the failure to complete and exchange contracts was wholly the fault of Sovereign and Dease; that on their part they continued their efforts to close the transaction, so far as the completion of the papers was concerned, until March 7, 1878, and that, failing in these, they demanded of John Campbell & Co. the logs in their possession, and the lumber, so far as any had been cut from their logs, and on the refusal to comply with the demand they took out their writ of replevin. On their part, Campbell & Co. showed that they offered to pay to the plaintiffs the five dollars per thousand feet which they agreed to pay to Sovereign and Dease, if plaintiffs would give them a bill of sale of the logs received by them, but plaintiffs refused.

From the foregoing statement of facts it will appear that the principal question involved in the merits of the case must be whether the title to the logs cut remained in the plaintiffs. It was insisted on their behalf that until the contract was signed and delivered, Sovereign and Dease had no authority to cut timber upon the lands at all, and that even if Ortmann had consented to their doing so—which was denied—his consent could not bind the other joint owners. On the other hand the defendants claimed that the consent of Ortmann was fully proved, and that this consent was a full license for what had been done, not only on his own behalf, but on behalf of the others for whom he was acting. The circuit judge submitted the case to the jury on the facts, instructing them, in substance, that if Ortmann consented to Sovereign and Dease going on to cut timber as they did, the action could not be maintained.

It is to be observed that this suit is not brought for the trespass—if there was one—but only to recover logs cut. It may therefore possibly be maintained even though the court should be satisfied that such a license was given as would protect against liability in trespass. The only question is whether the title to the logs passed from the owners of the lands to the parties cutting them. And upon this question we cannot agree with the circuit judge that the license—if one was given—is at all conclusive.

It is plain from the evidence that if Ortmann gave consent to the cutting, it was in anticipation of the execution of the contract, and by way of accommodation to the vendees who would be delayed in their lumbering operations if they waited for the contract to be fully executed and delivered. It was not in Ortmann's mind that his consent was to give the vendees rights the contract would not give, or to waive any rights the contract would secure to himself and his associates. Neither is there any reason for believing that the vendees understood they were to be at liberty to do that which would

not be warranted by the written agreement, nor any room for the suggestion that John Campbell & Co., who had notice of all the facts, stand in any more favorable position than do the vendees.

Now if under such circumstances the contract which was agreed upon reserved to the vendors the title to the logs until paid for, the license to cut the logs in anticipation of the due execution of the contract would necessarily be subject to the same condition. The most the vendees could claim would be that the parties were proceeding under the contract, and were to be protected as long as they lived up to its provisions. A license, like an estoppel, is to be restricted to the fair understanding upon which the parties were at liberty to act. *Rust v. Bennett*, 39 Mich., 521. It cannot be understood as a general authority to the licensee to do what he pleases.

In view of the facts it is plain that the case was submitted to the jury under erroneous views respecting the rights which the license could confer upon the defendants. Many questions were discussed in the circuit court which seem to us of no moment; but conceding all that defendants claimed, the license, under the facts as now exhibited to us, could not pass the title to the logs so long as they remained unpaid for.

The judgment must therefore be reversed, with costs, and a new trial ordered.

The other Justices concurred.