EGBERT G. SOVEREIGN AND CHARLES DEASE v. CHARLES L. ORTMANN, LOUIS HEIDELBACH, PHILIP HEIDELBACH AND SIGMUND ROTHSCHILD.

*Agreements referring to void contracts—Evidence.*

A verbal agreement is valid so far as it has been carried out, even though, when made, it referred for its terms to another contract not then signed and not, in fact, signed aftewards, and therefore, invalid. Nor can such an agreement be so revoked as to undo what has been earned under it.

Where a parol agreement adopts as a standard a proposed contract not then in writing, the fact that the latter was never executed does not make it inadmissible to show, by reference, what the terms of the agreement were.

A logging contract with the owners of certain pine lands provided that they were to sell the other parties, on certain terms, all the white pine the latter should cut from the lands before a certain date. The signing of the contract was delayed, but meanwhile the parties made a verbal agreement that the purchasers should proceed with their lumbering. The original contract was not signed after all, and the owners of the land replevied the logs which the other parties had got out and forwarded to buyers, whereupon the purchasers sued for damages. *Held*, that the plaintiffs were entitled to all the interests which they had earned under their parol agreement so far as they had executed it, whether it made them agents or equitable owners, and that they could recover their agreed compensation, or the money had and received by defendants to their use, or such damages as might appear, according to the nature of the agreement; the case was one for the jury.

Error to Bay. Submitted Oct. 18. Decided Oct. 26.

ASSUMPSIT. Plaintiff brings error. Reversed.

*Shepard & Lyon* and *Hatch & Cooley* for plaintiffs in error. Where a party to an agreement which is void under the Statute of Frauds, fails to execute it, the other may recover back the price advanced or value of work done in part performance of it: *Smith v. Smith* 28 N. J. L. 217; *Freeman v. Headley* 32 N. J. L. 225 : 33 N. J. L. 538; *Miller v. Tobi* 41 N. H. 84; *Mayor v. Pyne* 3 Bing. 285; *Gray v. Hill* Ry. and Mood. 420; *Gillet v. Maynard* 5 Johns. 85; *Shute v. Dorr* 5 Wend. 204; *Lockwood v. Barnes* 3 Hill 128; *Abbott v. Draper* 4 Den. 51; *King v. Brown* 2 Hill 486; *Eaton v. Eaton* 35 N. J. L. 293; *Scott v. Bush* 26 Mich. 418; Browne Statute Frauds §§ 118, 119.

*Wisner & Draper* and *John J. Wheeler* for defendants in error. A void contract cannot be the basis for either attacking or defending a contract which refers to it for its terms: *Dung v. Parker* 52 N. Y. 494; *Levy v. Brush* 45 N. Y. 589; *Liddle v. Needham* 39 Mich. 149; Browne Statute Frauds 133; the belief that the void contract would be perfected raises no implied promise for work done under the other contract: *Shreve v. Grimes* 4 Litt. 220; *Kemble v. Dresser* 1 Met. 271; *Cook v. Doggett* 2 Allen 439.

CAMPBELL, J.   Plaintiffs sued defendants to recover damages arising out of certain logging transactions in which they claim that defendants, after allowing them upon an understanding between them to cut timber and expend large sums in their operations, appropriated the timber entirely and refuse to make them any return or compensation.   The court below directed a verdict for the defendants, and it is supposed this was done because the transactions were dependent on an agreement void under the statute of frauds.

There was a special count, which the court below held bad on demurrer, and common counts.   The case finally went off on an offer by plaintiffs to prove certain facts which the court held would give no cause of action. The contract in one of its bearings was referred to in the case of *Ortmann v. Sovereign* 42 Mich. 1, where reference was made to one of its provisions.   In the present case the issues are quite different, but a brief statement will be sufficient to present the points in issue.

The suit is not brought either on a written contract, or on the failure to make one—as seems to be supposed in some of the points raised.   Nevertheless a written agreement which the parties expected to enter into, is of some importance in the case, and must be referred to.

In the fall of 1877 defendants owned certain pine lands in Bay county, and it is claimed that there was a contract agreed upon verbally that writings should be made whereby defendants were to sell the plaintiffs all the white pine which plaintiffs should cut before May, 1880, for the sum of $16,000, which was to be paid at all events, but in the following manner: A note of John Campbell & Co. of Bay City for $3000 indorsed by plaintiffs, payable in July, 1878, and three notes of plaintiffs for the balance, payable at intervals before the expiration of the contract.   Plaintiffs were at liberty to cut and remove the timber, and were to pay for what they removed at the rate of $5 per thousand for number 1 and 2 logs, and $3 for common, and such payments were to be indorsed on the notes in their order.

Some delays occurred in the signing of the contracts which each party lays to the fault of the others, but which do not seem to have any bearing on this controversy, as it is enough that the papers were not signed.

During these delays, and while the papers were expected to be signed, as the winter was advancing, a verbal agreement was made between the parties that plaintiffs should make their roads and camps, and other preparations, and proceed to lumber. Under this arrangement they got out a large amount of lumber, consisting of over two millions, but the precise amount is not now important to consider. Of this they forwarded 300 thousand feet to Campbell & Co., which defendants replevied. These are the logs involved in the suit which was decided in this court, before referred to. The remaining logs were to be sent down in the spring, but before they were moved defendants took possession and ousted plaintiffs, and stopped their operations.

During the replevin litigation, or at some other time which is not absolutely fixed, plaintiffs claim it was agreed that defendants would on payment of stumpage at the rates before mentioned, allow plaintiffs to have any balance which could be obtained for the logs, and might obtain other purchasers than Campbell & Co., but the resumption of possession prevented it.

The effect of the written agreement would have been substantially to give plaintiffs an interest in all logs cut over and above the stumpage, and such was the effect of the verbal contract, if valid. The question presented is whether the plaintiffs had under the circumstances any remaining rights. For the purpose of this suit, the facts are to be regarded as capable of proof.

We think the objection that the new verbal contract is dependent for its validity on the original contract is not well founded. Assuming the invalidity of such a contract as that, if resting in parol, we do not see how the verbal arrangement made pending the preparation and expected signing of that can be regarded as anything but a separate and provisional agreement, which must depend on its own cir-

cumstances.   There can be no question but that such an agreement is valid, although in parol, so far as carried out, and that it cannot be revoked so as to undo what has been earned under it.    *Wetherbee v. Green* 22 Mich. 311 ; *Greeley v. Stilson* 27 Mich. 153 ; *Haskell v. Ayres* 35 Mich. 89. And the fact that a proposed writing was never executed does not make it any the less sufficient to show by reference the terms of a parol agreement that adopts it as a standard.

The plaintiffs are entitled to all the interests which they earned by their parol agreement so far as executed, whether it is to be regarded as an agency to do the work for a compensation depending on the excess over stumpage value, or whether they are to be regarded as owners in equity subject to defendants' legal title defeasible on payment of stumpage. They have a right to recover either their agreed compensation, or the money had and received by defendants to their use, or such damages as may appear in case the arrangement does not assume these precise forms.

It would be of no use for us to attempt to dispose of these questions specifically, because we cannot tell what the evidence may show.   But we have no doubt they had a right to go to the jury.

The judgment below must be reversed with costs and a new trial granted, with leave to plaintiffs to amend by adding special counts if they see fit.

MARSTON, C. J. and GRAVES, J. concurred : Mr. Justice COOLEY was not present at the hearing.