HORACE H. CHITTENDEN, as Assignee of A. S. HATCH & CO., Appellants, v. CHARLES O. MORRIS and Others, Respondents.

*Deposit made by way of securing the execution of an agreement for the sale of bonds, to be withdrawn only by the vendor and vendee jointly — by whom and how it may be withdrawn.*

Where money has been deposited under an agreement by which the depositor, assuming himself to be obligated to deliver certain bonds, and promising to perform the contract for the sale thereof, and asking for additional time for that purpose, has obtained such time in consideration of the deposit being made (by the terms of which deposit the money was to be repaid to the depositor and the party entitled to the delivery of such bonds jointly), the depositor becoming insolvent, his assignor is not in a position to maintain an action for the recovery of such deposit upon the ground that the original contract for the sale and delivery of the bonds was in violation of the statute of frauds and was not binding upon such depositor.

A deposit made under such circumstances cannot be afterwards recovered by the party making it, when that party alone has wholly failed to comply with the terms of the agreement under which the deposit was made.

Such deposit does not rest upon the illegal contract made for the delivery of the bonds, but upon the agreement made at the time of such deposit for the benefit of the parties claiming the right to the delivery of such bonds.

The court has no power to direct the depositary to pay over the deposit to the assignee of the depositor, while the other party in interest refuses to consent to the delivery thereof to him.

Such deposit can only be withdrawn by the joint assent and joint acts of both parties, or upon the fulfillment by the depositor of the promise made on his part for the delivery of the bonds.

Appeal by the plaintiff from a judgment, rendered at the New York Special Term, dismissing the complaint upon the merits, which judgment was entered in the office of the clerk of the county of New York on the 10th day of July, 1888.

The action was brought demanding judgment that the individual defendants be required to join with the plaintiff in an order upon the defendant, the Farmers' Loan and Trust Company, for the payment to the plaintiff by said Farmers' Loan and Trust Company of the sum of $5,000, deposited by plaintiff's assignors with said Farmers' Loan and Trust Company, and that the Farmers' Loan and Trust Company be decreed to pay to the plaintiff the sum of $5,000, with accrued interest.

*James M. Townsend, Jr.,* for the appellants.

*George B. Wellington,* for the respondents.

DANIELS, J.:

The fact was proved upon the trial that Gustavus Maas, on the 24th of December, 1886, by a memorandum which he executed, sold to White, Morris & Co. $20,000 Troy and Boston seconds, at seventy-five cents. On the same day, and by a similar instrument, he sold to the same parties $30,000 of the same securities. The memorandum subscribed by him was the same in each instance, with the exception of the amount. That for the $30,000 is in the following words and figures:

Sold White, Morris & Co., $30,000 Troy & Boston 2nd, 75 reg.
*Dec.* 24, 1886.                       .            G. MAAS.

By these memoranda, as they were explained by the evidence, Maas agreed to sell and deliver to White, Morris & Co., who were defendants in the action, these bonds for the designated price of seventy-five per cent, and that was sufficient to comply with the statute requiring the agreement, or a memorandum of it, to be in writing and subscribed by the party to be charged. The evidence proving the contracts of sale and the execution of these memoranda was objected to by the plaintiff, but the objection was overruled and the proof was received by the court, to which the plaintiff excepted. And it is quite clear that neither of these exceptions was well taken, or the evidence which was given had a direct tendency to establish the fact of a legal contract for the sale of the bonds, and to explain the abbreviations contained in the memoranda. It was not proved by mere declarations or conversations occurring between other parties, in the absence of the plaintiff's assignors; but it was evidence given to prove the nature and character of the transaction itself, which took place between the parties, and the manner in which it was brought about and completed.

The bonds were not delivered to the purchasers in performance of the terms of these memoranda, and on the 29th of December, 1886, one of the members of the firm of A. S. Hatch & Co., who are the plaintiff's assignors, at the instance or upon the information of Mr. Tobey, who was a member of the firm of Tobey & Kirk,

applied to the purchasers of the bonds named in these memoranda for further time for their delivery. According to his own and further evidence in the case, his firm had contracted to sell these identical bonds, but not by any instrument in writing, or for any part payment made upon the purchase-price; but the persons to whom the firm of Hatch & Co., in this manner, agreed to sell the bonds, had, either directly or indirectly, empowered Maas to enter into the contracts of sales he made with the firm of White, Morris & Co., and the firm of Hatch & Co. had received the information that when the bonds were to be delivered this firm of White, Morris & Co. was the party who should receive them. The understanding of the member of their firm, with which the witness Hatch is stated to have held his conversation, the proof of which was clearly admissible, was that the firm of White, Morris & Co. had purchased the bonds of the firm of Hatch & Co., which, of course, could only have been done by the fact existing that Maas, who made the memoranda for the sales of the bonds, was authorized and empowered to act for the firm of Hatch & Co. in agreeing as he did for their sale. But whether such a relation, in fact, existed between himself and Hatch & Co. was not proven in the case, otherwise than it might be inferred from the conversations stated to have taken place.

In this conversation between the witness Hatch and Mr. Blackwell, of the firm of White, Morris & Co., Mr. Hatch stated that Blackwell said: " The firm had bought the bonds of us; that is what it amounted to, they bought the bonds of somebody else, and so on ; and, then, he finally came around to the statement that they bought them of us. I presume that it was before I told him that I would deliver the bonds that he claimed he bought them of us; I went around there to make arrangements with respect to the delivery of the bonds, of $50,000 Troy and Boston bonds. I understood that Tobey & Kirk had sold the bonds to somebody, who had sold them, or a similar amount, to White, Morris & Co." He further added that he had been informed previously by Mr. Tobey that these very bonds had been sold to White, Morris & Co; that is, that in a roundabout way they had got to White, Morris & Co. The firm of Hatch & Co. was not in a condition at the time of the conversation to deliver these bonds to the purchasers under these

memoranda of agreement, and an application was made by this member of the firm of Hatch & Co. to them for further time to deliver the bonds ; and that is stated to have been given to that firm, on the agreement then made to make a deposit of ten per cent of the amount of the purchase-price with the Farmer's Loan and Trust Company, another defendant in this action. The delay which Hatch & Co. applied for is stated to have been a period of two or three weeks, at the expiration of which they were to deliver the bonds. And one of the firm of Hatch & Co., and also of White, Morris & Co., was a member of the Stock Exchange, one of whose rules provided and declared :

SECTION 1. In any contract, either party may call at any time during the continuance of the same for a mutual deposit of ten per cent. And whenever the market-price of the securities shall change way below five per cent, either party may call upon the other for a deposit sufficient to restore the impaired margin, and this may be repeated as often as the margin may be so reduced.

The firm of White, Morris & Co. had complied with this rule or section by making the deposit, on their part, of the sum of $5,000 with the Farmers' Loan and Trust Company, pursuant to it  To obtain the extension which Mr. Hatch applied for from the firm of White, Morris & Co., the firm of Hatch & Co. were required to make a like deposit of ten per cent on the price with the Farmers' Loan and Trust Company. They did make that deposit on the day when this extension was agreed to be given, and received from the Farmers' Loan and Trust Company its certificate in the following language :

" This is to certify that A. S. Hatch & Co., has deposited with this company five thousand dollars, payable in current funds, on one day's notice, to them and White, Morris & Co. jointly, upon the surrender of this certificate (which is assignable upon the books of the company), with interest at the rate of two per cent per annum, provided the deposit is not disturbed until after the expiration of three days.

" $5,000.          (Sgd.)          " WM. H. LEUPP,
                                    " *Secretary.*

                  (Sgd.)          " T. F. BARNETT,
                                    " *Cashier.*"

The firm of Hatch & Co. after that failed to deliver these bonds, became insolvent, and made a general assignment to the plaintiff in this action, and he brought the suit to recover this sum of $5,000, in this manner placed on deposit with the Farmers' Loan and Trust Company. The right to maintain the action has been placed upon the ground that the contract of Hatch & Co., not being in writing, and no part of the purchase-price having been paid, was void, and for that reason he, as assignee, was entitled to the return of this sum of money. And while the position might be well taken that the contract of Hatch & Co. to deliver the bonds was not binding upon them under the statute of frauds, still the money was deposited with the Farmers' Loan and Trust Company under an agreement made between these two different firms, for a consideration of which the firm of Hatch & Co. had the benefit. They assumed to be obligated to deliver these bonds to the persons who had purchased them from Gustavus Maas, and promised that they, in his place, would perform the contracts of sale of which memoranda had been made in writing. But because of the delay or inability of the party from whom the bonds were to be received by Hatch & Co., they were not in a condition to deliver them and required additional time for that purpose, and it was in consequence of the extension of that time and for that consideration that they made this deposit with the Farmers' Loan and Trust Company; and by the contract which the company then entered into, the money was placed upon deposit only to be repaid to the two firms of Hatch & Co. and White, Morris & Co., jointly.

This was an entirely legal contract between the Farmers' Loan and Trust Company and the firm depositing the money now in controversy. It was placed in the hands of the depositary under this certificate, by which the obligation was created of paying over the money on one day's notice to the firms of White, Morris & Co. and A. S. Hatch & Co., jointly. There was no arrangement or agreement by which the money should be paid, or should be demanded by Hatch & Co., or their assignee, in case they failed to fulfill what they had promised to do by delivering the bonds to the purchasers in the memoranda of agreement made by Maas. The deposit appears to have been made by way of security, that Hatch & Co. should deliver the bonds at the expiration

of the time which was extended to them for this purpose at their request. And each party made the same deposit with the trust company, that the moneys deposited should be held by way of security for the benefit of the party entitled to the fulfillment of the contracts of sale, and, in no other manner, in default of their performance. After the parties placed their funds in this position, and, by means of this agreement, which entirely declared and regulated their mutual rights, the court has no power to change the contract and to require either to do what he has not agreed should be done, or to act contrary to the agreement itself and join with the other for withdrawing the deposit, when the firm in whose interest the withdrawal has been claimed has wholly failed to fulfill the terms made by it for the future delivery of the bonds. It is not sufficient to maintain the plaintiff's action, that his assignors did not become bound by their promise to deliver the bonds, or for the performance of the agreement made by Maas. The cases, accordingly, of *Ackley* v. *Parmenter* (98 N. Y., 425), and *White* v. *Rintoul* (108 id., 222), are not decisive or controlling over this action. For in those cases no more than the fact of the promise or agreement itself, which had taken place between the parties, was before the court for examination or decision. Neither is the case of *Dung* v. *Parker* (52 N. Y., 494), applicable to the action. For that has proceeded no further than to hold that an agreement within the statute of frauds, not in writing, and upon which no part of the purchase-price has been paid, and entirely unperformed, is void between the parties. Neither do the cases of *Noakes* v. *Morey* (30 Ind., 103), or *Howe* v. *Hayward* (108 Mass., 54), decide anything controlling over this controversy. For in neither has it been held, nor was anything said from which that could be inferred to be the opinion of the court, that a deposit made in this manner could be recovered afterwards by the party making it, when that party alone had wholly failed to comply with the terms on which the deposit was made. In the case of *Howe* v. *Hayward* (*supra*), which has considered the subject more directly than either of the others, a verbal agreement had been made for the sale of the stock of a livery stable for the price of $2,500, and a deposit of $200 had been made to secure the performance of the agreement. The action there was not brought to recover the deposit, but it was for damages for a failure to perform the agree-

ment. And what the court held was, that the simple deposit of the sum of $200 was not a payment on the contract of sale and did not take it out of the statute of frauds, and for that reason the contract, not being in writing, afforded no foundation for an action for damages. This case is entirely different from that or any other action which has been found to have been favorably disposed of by the courts. It is not dependent upon the verbal promise made by Hatch & Co. to deliver the bonds, but upon an additional agreement made for the benefit of that firm, and by that agreement it was given time for the future delivery of the bonds, which were expected to pass through its hands, on condition that this deposit of $5,000 should be made with the trust company, and made upon the terms exhibited by the certificate issued when the deposit was made. It was a valid agreement on the part of the company, and met the understanding and expectations of both parties leading to the deposit, and that was that the money for the security of White, Morris & Co. should be placed in the possession of the Farmers' Loan and Trust Company, only to be repaid to Hatch & Co., when that should be assented to by the joint action of Hatch & Co. and the firm of White, Morris & Co. This was a separate and distinct agreement made between these two different firms, and carried out by a legal obligation executed and delivered declaratory of the liability of the trust company at the time when the money was received. The parties in this manner made their own agreement, and there seems to be no legal principle upon which the court can change it and hold their rights to be different from those which they have declared. In a word, the court has no authority to direct that the trust company shall pay over this money to the assignee of Hatch & Co., upon their sole and separate demand, when White, Morris & Co. object to that being done, and refuse, as they do, to authorize this payment. The misfortune of the plaintiff, if it is to be so considered, is that the contract which was entered into between these parties for the consideration created by this extension of time, is against the claim made by him as the foundation of his action. It was not the result of any mistake, or of any fraud perpetrated on his assignors, but it was their deliberate agreement, understandingly entered into, that this money should be placed in the possession of the trust company and should not be withdrawn from the possession of that company,

except by the joint assent or joint action of both Hatch & Co. and White, Morris & Co. That event has not taken place, neither has any state of facts arisen, as they are not in default, by which White, Morris & Co. can be obligated under the agreement which was made to give this assent or confer this authority. The right of Hatch & Co. to a return of the money depended upon a fulfillment of their promise for the delivery of these bonds. They placed the money subject to that obligation, and the additional circumstance that before the trust company should pay it over it should also have the assent or authority to that act of White, Morris & Co. The event has not arisen under which the right can be asserted to withdraw this money, as the right to it has been clearly defined and expressed by the agreement which was made, and which the plaintiff's assignors failed to perform. There appears to be no ground upon which the court can hold, in violation of the obligations which were created, that this money should be paid over to the plaintiff, or that the firm of White, Morris & Co. shall concede their consent or authority when they have, at no time and under no circumstances which have transpired, agreed to allow this money to be paid over to Hatch & Co. or their assignee.

The same result also follows from the principle that the party who has, in part, performed a contract void under the statute, which the other party is ready and willing to perform, cannot, on the sole ground of his or their own default, recover for what has been paid or done in the way of part performance. The principle applicable to the case seems to be that the party able, willing and ready to perform cannot be compelled to refund to the party who bases his action entirely on his own inability or refusal further to perform on his part. If the party receiving the part performance refuses to perform the residue of the agreement, then the law will infer a promise on his part to return what he may have received. But neither that promise nor any equivalent obligation will be inferred in favor of the party whose demand rests wholly on his own default in the way of completing what has, in fact, been partly done by him. The soundness of this rule was recognized in *Baldwin* v. *Palmer* (10 N. Y., 232), and it was followed in *King* v. *Brown* (2 Hill, 485), where it was said by NELSON, Ch. J., that " the contract being void and incapable of enforcement in a court of law, the party paying

the money or rendering the service in pursuance thereof, may treat it as a nullity and recover the money or value of the services rendered under the common counts. This is the universal rule in cases where the contract is void for any cause not illegal, if the defendant be in default." (Id., 487.) And also in *Lockwood* v. *Barnes* (3 Hill, 128), where it was said : " The party who refuses to go on with the contract after having derived a benefit by a part performance must pay for what he has received." (Id. 130.) This rule was also observed in *Sovereign* v. *Ortmann* (47 Mich., 184); *Bennett* v. *Phelps* (12 Minn., 326); *Clancey* v. *Craine* (2 Dev. Eq., 363); and in *Abbott* v. *Draper* (4 Denio 51, 53), which is a direct authority against the plaintiff. It has likewise been applied to a similar class of cases arising under statutes declaring that no action shall be maintained on an unwritten contract in *Congdon* v. *Perry* (13 Gray, 3); *Coughlin* v. *Knowles* (7 Metc., 57), and other authorities therein referred to.

On each of these grounds the judgment seems to be right, and it should be affirmed, with costs.

Van Brunt, P. J., and Brady J., concurred.

Judgments affirmed with costs.

Note. — The rest of the cases of this term which are to be reported, with the list of decisions in those cases decided and not reported, will be found in the next volume of Hun (53). — [Rep.