(77 N. W. Rep. 279.)

---

## R. W. PEOPLES *vs.* EVEN EVENS.

Opinion filed October 29, 1898.

### Contract—Relinquishment of Timber Culture Entry.

> The relinquishment of a timber-culture entry, which carries with it certain valuable improvements, made for the benefit of another person, and that he might file a homestead entry thereon, all under mutual agreement, is a sufficient consideration for the latter's promise that the former might crop the land.

### Statute of Frauds—Executed Contract.

> A lease which is void under the statute of frauds, by reason of being for a period of more than one year, nevertheless governs the rights and relations of the parties so far as executed.

### Erroneous Instructions—New Trial.

> Certain instructions examined, and *held* erroneous, and a new trial properly granted.

Appeal from District Court, Walsh County; *Sauter,* J.

Action by R. W. Peoples against Even Evens to recover possession of certain crops. The opinion states the facts. Verdict for defendant. From a order granting a new trial, defendant appeals.

Affirmed.

*Bosard & Bosard,* for appellant.

*Bangs & Guthrie,* for respondent.

YOUNG, J. This is an action in claim and delivery involving the possession and ownership of certain grain grown in 1893 upon the lands described in the complaint. The defendant had a verdict at the hands of a jury, and plaintiff's motion for a new trial, based upon alleged errors in the court's instructions, was granted. From this order defendant appeals to this court. Both parties based their right to the possession of the property upon a claim of ownership. The title to the land upon which the grain in controversy was grown was still in the government. The plaintiff filed upon it a timber culture entry in 1888, and has since continued to live upon it. On April 30, 1892, however, pursuant to an arrangement with the defendant, he relinquished his entry, and on May 2, 1892, the defendant filed upon it as a homestead, both parties thereafter continuing to live upon the land, and in apparent harmony, until the present controversy arose.

The evidence on both sides is very meager and extremely unsatis-factory. Plaintiff's evidence fairly discloses that at the time he relinquished his entry, and the defendant made his filing, it was agreed between them that the plaintiff should continue in pos-session of the land, and, using his language, "plow and sow and reap the same as if nothing had happened;" further, that the defendant also, and at the same time, agreed to deed the land back to him after proving up on it. It further appears from his evidence that in the fall of 1892 the defendant told him to go on and plow for this crop, and that he did so; also that in the spring of 1893, in April, when he was seeding the land, a further conversation was had, at which time they had what he terms "an understanding," by which he was to put in and take off this crop, in substance and effect, so far as we can see, in no way differing from the original arrangement made at the time of the relinquishment, and possibly merely a reaffirmance or continuance of it. It is conceded that plaintiff produced and harvested the crop; also that his grain was used in seeding it, although defendant claims to have bought, and agreed to pay for, the same. The defendant's evidence, on the other hand, while it does not deny the agreements which plaintiff says were made between them, as to the possession and use of the premises, at the time the relinquishment was executed, yet squarely contradicts plaintiff's version of the conversations occurring in the fall of 1892 and spring of 1893. The defendant testifies, in effect, that at the first of these conversations the plaintiff expressed a desire to lease the land, to which request he gave no definite answer, and that at the second conversation a positive agreement was reached by which the plaintiff, after being refused a lease, was permitted to continue and put in the crop, but for customary wages for his services; in fact, a contract of hiring, which, in effect, of course, would supersede any prior negotiations, and make him the owner of the crops grown. In support of his evidence on this point de-fendant offered in evidence the following written instrument, ad-mittedly executed by the plaintiff and his wife: "To Whom It May Concern: We, the undersigned, agree and confirm that we are to receive ordinary or customary pay for harrowing, drilling, and plowing per acre on the northeast quarter (N. E. $\frac{1}{4}$) of section 30, township 156, range 53 west. (Signed) R. W. Peoples, Isabella Peoples. Dated the 8th day of May, 1893."

Upon this state of facts, fairly appearing in the evidence, the case was submitted to the jury under instructions which plaintiff in his motion for a new trial urged were erroneous, and which were so held by the lower court. For the purpose of this deter-mination, it is necessary to refer only to those portions of the charge contained in the following language: "A lease of real property, if for more than one year, has, under the statute, to be in writing, and, unless you find from the evidence that the plaintiff leased this land from the defendant by a written contract of lease, or for a period not exceeding one year by a verbal agreement, then

you must find for the defendant." Again: "An agreement to file a homestead entry upon land for the benefit of another is unlawful and void, and does not furnish any lawful consideration for any contract. Every contract must be upon a lawful and valid consideration, and unless the lease for this land, if you find there was a lease, was upon a lawful consideration, then your verdict must be in favor of the defendant."

Accepting plaintiff's version of the transaction as true, it is clear that he, in return for the surrender of his entry to the defendant, received from him two promises to the enforcement of which the law would not lend its sanction, namely, the promise to deed back, and the promise of the use of the land,—the first, because of the unlawful nature of the promise itself; the second, because it seems counter to the statute of frauds, amounting, as it does, to a lease for a period of more than one year. Plaintiff was therefore powerless to enforce the performance of either promise. But, suppose the defendant had voluntarily deeded the land to the plaintiff pursuant to his promise, would a court lend its assistance to him to get back that which he has conveyed under his own fraudulent and unlawful arrangement? Clearly not. Likewise the agreement that plaintiff might continue to possess and crop the land, if made, while not enforceable if resisted by proper steps and in a timely manner, yet, so far as it was voluntarily executed, governed and fixed the rights and relations of the parties so far as executed. Again, the plaintiff's relinquishment of his timber-culture entry, whereby the defendant was enabled to file his homestead entry, carried with it certain valuable improvements, and constituted a sufficient consideration to support defendant's promise that plaintiff might continue to crop the land. *Lindersmith* v. *Schwiso,* 17 Minn. 26 (Gil. 10). If, in fact, an agreement was made which undertook to cover the production and ownership of crops in the future,—in effect, a lease, —although repugnant to the statute of frauds as to time, yet, so far as executed, that agreement governs. *Evans* v. *Lumber Co.,* 30 Minn. 515, 16 N. W. Rep. 404; *Morrill* v. *Mackman,* 24 Mich. 279; *Laughran* v. *Smith,* 75 N. Y. 205; *Larkin* v. *Avery,* 23 Conn. 304; *Sovereign* v. *Ortman,* 47 Mich. 181, 10 N. W. Rep. 191; Bish. Cont. § 634.

After a careful examination of the evidence, we have reached the conclusion that the instructions complained of were erroneous and prejudicial, and for that reason the lower court's order granting a new trial should be affirmed. The instructions were erroneous in two particulars: First. The jury were substantially instructed that there was no consideration for the alleged agreement or lease, whereas, as just noted, plaintiff's relinquishment of his timber-culture entry, if executed in pursuance of the agreement disclosed in the evidence, constituted a sufficient consideration to uphold defendant's promise to permit plaintiff to crop the land. Second. Because the instructions given permitted a recovery by plaintiff

only upon the jury's finding that plaintiff produced the grain in question either under an oral lease for one year, or a written lease if for more than one year,—clearly excluding plaintiff's right to recover under the terms of an executed lease which as to time was within the statute of frauds.

We deem it proper to remark that this result has been reached only by construing plaintiff's testimony broadly and as to its effect. By his actual language as embodied in the record, he seems to have based his ownership of the grain in question, and right to recover the same, upon the conversation occurring in the spring of 1893, and at the same time and in express language he disclaimed having a lease. Doubtless, the instructions complained of were given under a belief that the plaintiff had by his testimony limited the basis of his right to recover to the conversation or agreement in 1893. We think, however, that we should give the plaintiff the benefit of all the facts fairly disclosed in the evidence, rather than to bind him by a mistaken interpretation of their legal effect. This evidently was the view taken by the lower court in granting a new trial. The exhibit offered in evidence by the defendant, and above set out, we do not consider conclusive against the plaintiff. It is merely evidence to be weighed by the jury in connection with plaintiff's explanation that it was executed at the defendant's request, not as an actual contract of hire covering the production of this crop, but merely as a pretense for the purpose of aiding the defendant in establishing his possession and use under his homestead entry. The writing itself lends some color to the explanation. The order granting a new trial is affirmed. All concur.