## W. D. GILE v. INTERSTATE MOTOR CAR COMPANY, a Corporation.

(— L.R.A.(N.S.) —, 145 N. W. 732.)

**Contract — sale of automobiles — specified territory — specified time — specified price — deposit money — failure to perform — action to recover deposit money — right denied.**

1. Defendant, a distributer of Interstate automobiles for the state of North Dakota, entered into a written contract with plaintiff by which the latter agreed to purchase and pay for at least 50 cars at specified dates during the life of the contract, and to deposit with defendant the sum of $1,250, being $25, on each car, to be applied by defendant on the purchase price of each when sold. In consideration thereof defendant allotted to plaintiff during the life of the contract, nearly one year, the exclusive right to solicit purchasers of and to sell such cars in ten designated counties of the state, and obligated itself to furnish cars to plaintiff, when ordered, at certain specified discounts from list prices. Plaintiff promised to diligently and faithfully advertise such cars in and to work such territory during the life of such contract, and to

do certain other things tending to promote and to effectuate the objects of the contract. Plaintiff advanced to defendant the deposit aforesaid, and entered upon the performance of the agreement. During the entire life of the contract both parties, in good faith, attempted to fulfil the same. Defendant was ready, able, and willing to perform on its part, but plaintiff did not succeed in making any sales during the entire period, and as a consequence was unable to and did not take and pay for any of such cars. Shortly after the termination of such contract by lapse of the period designated therein for its existence, plaintiff brought this action to recover such deposit as for money had and received by defendant to his use, claiming a right to the repayment thereof upon the ground that the consideration had wholly failed. *Held*, for reasons stated in the opinion, that he cannot recover.

**Implied promise — repayment — equity — good conscience.**

2. In order to maintain such action it is incumbent on plaintiff to establish facts from which the law raises an implied promise on defendant's part to repay such money, and such a promise will never be implied except where it appears that in equity and good conscience defendant ought not to be permitted to retain the same.

**Contract — mutuality — executory — rights of parties — measured by the contract.**

3. Whether the contract lacked mutuality and was therefore voidable and unenforceable while it remained wholly executory is not controlling. The contract was not illegal or unlawful, and the parties having acted under it during the entire period of its existence, it cannot, so far as executed, be questioned, and it must, to such extent, control and measure the rights of the respective parties.

**Stipulation — contract — liquidated damages — not a penalty — valid.**

4. The stipulation in the contract authorizing the retention by defendant of such deposit as liquidated damages for plaintiff's breach thereof, *held*, not in the nature of a penalty, because from the nature of the case it would be extremely difficult, if not impossible, to fix the actual damages.

**Breach of contract — performance — deposit — money had and received.**

5. Plaintiff having breached the contract while defendant performed the same, as far as plaintiff permitted it to do so, the former cannot recover such deposit as for money had and received.

**Damages — defense — want of equity.**

6. Defendant, by his answer and proof, did not seek to recover damages against the plaintiff under the contract, but he merely plead and proved such actual damages as far as they were susceptible of proof, as defensive matter tending to show a want of equity in plaintiff's claim.

Opinion filed February 13, 1914.

Appeal from District Court, Nelson County, *C. F. Templeton,* J.
From an order granting a new trial, defendant appeals.
Reversed.

*Scott Rex,* for appellant.

The action for money had and received only lies in those cases where the defendant has received money or its equivalent which in equity and good conscience belongs to the plaintiff. Krump v. First State Bank, 8 N. D. 75, 76 N. W. 995; Logan v. Freerks, 14 N. D. 127, 103 N. W. 426; Martin v. Toyer, 19 N. D. 504, 125 N. W. 1027; Siems v. Pierre Sav. Bank, 7 S. D. 338, 64 N. W. 167; 15 Am. & Eng. Enc. Law, 1096; 27 Cyc. 849.

Money paid in the fulfilment of a valid contract cannot be recovered back unless the contract has been rescinded by consent, or by failure of defendant to perform. 30 Cyc. 1322; Chemical Nat. Bank v. World's Columbian Exposition, 170 Ill. 82, 48 N. E. 331; Fox v. Monahan, 8 Cal. App. 707, 97 Pac. 765; Todd v. Bettingen, 109 Minn. 493, — L.R.A.(N.S.) —, 124 N. W. 443; Moses v. MacFerlan, 2 Burr. 1005, 1 W. Bl. 219; Slevin v. Police Fund Comrs. 123 Cal. 130, 44 L.R.A. 114, 55 Pac. 785.

A party who has breached the contract has no right to recover back the payments made by him. Clark v. American Development & Min. Co. 28 Mont. 468, 72 Pac. 978; Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037; Way v. Johnson, 5 S. D. 237, 58 N. W. 552; Maloy v. Muir, 62 Neb. 80, 86 N. W. 916; York v. Washburn, 118 Fed. 316; Warvelle, Vend. & P. § 926; McKinney v. Harvie, 38 Minn. 18, 8 Am. St. Rep. 640, 35 N. W. 668; Downey v. Riggs, 102 Iowa, 88, 70 N. W. 1091; McManus v. Blackmarr, 47 Minn. 331, 50 N. W. 230; Lawrence v. Miller, 86 N. Y. 131; Hanschka v. Vodopich, 20 S. D. 551, 108 N. W. 28; Thomas v. McCue, 19 Wash. 287, 53 Pac. 161; Chemical Nat. Bank v. World's Columbian Exposition, 170 Ill. 82, 48 N. E. 331.

The contract in question is an executory one for the purchase of cars. Defendant never at any time *sold* plaintiff any cars. Defendant was at no time in default. Bell v. Hatfield, 121 Ky. 560, 89 S. W. 544, 2 L.R.A.(N.S.) 529, and case note; Krebs Hop Co. v. Livesley, 55 Or. 227, 104 Pac. 3; 35 Cyc. 584.

The seller of goods is entitled to such damages as will put him in the

same position as though he had been permitted to complete the contract, which usually is the difference between the contract price and what it would have cost him to perform. American Contr. Co. v. Bullen Bridge Co. 29 Or. 549, 46 Pac. 138; Roehm v. Horst, 178 U. S. 1, 44 L. ed. 953, 20 Sup. Ct. Rep. 780; Canfield v. Orange, 13 N. D. 622, 102 N. W. 313; Young v. Metcalf Land Co. 18 N. D. 441, 122 N. W. 1101.

Where the sum stipulated in the contract as damages is *less* than the *actual* damages, it cannot be held to be a penalty. Krausse v. Green-field, 61 Or. 502, 123 Pac. 392.

Losses which are the necessary and ultimate result of plaintiff's breach of the contract are proper elements of general damages, and need not be specially pleaded. 13 Cyc. 175; 5 Enc. Pl. & Pr. 740.

Assuming that the original answer was defective, it would have been an abuse of discretion had the court refused to permit the amendment offered. Martin v. Luger Furniture Co. 8 N. D. 220, 77 N. W. 1003; Welch v. Northern P. R. Co. 14 N. D. 19, 103 N. W. 396; Kerr v. Grand Forks, 15 N. D. 294, 107 N. W. 197; Webb v. Wegley, 19 N. D. 606, 125 N. W. 562.

*Frich & Kelly,* for respondent.

The contract involved in this case is a conditional sale. Poirier Mfg. Co. v. Kitts, 18 N. D. 557, 120 N. W. 558; Morrison Mfg. Co. v. Fargo Storage & Transfer Co. 16 N. D. 256, 113 N. W. 605.

After September 1, 1911, respondent could not require delivery of the cars under the contract, nor could appellant make delivery and compel acceptance and payment. Norrington v. Wright, 115 U. S. 188, 29 L. ed. 366, 6 Sup. Ct. Rep. 12; Sweetzer v. Mellick, 4 Idaho, 201, 38 Pac. 403.

The action for money had and received is equitable in its nature. It does not depend on an express promise, but on the fact of the *receipt of the money* by one from another, through oppression, impo-sition, extortion, or deceit, mistake of fact, or without consideration, or on a consideration that has failed, and from which the law *implies* a *promise* to *repay*. Ashton v. Shepherd, 120 Ind. 69, 22 N. E. 98; Richter v. Union Land & Stock Co. 129 Cal. 367, 62 Pac. 39; Tilford v. Roberts, 8 Ind. 254; Davis v. Marston, 5 Mass. 199; Dill v. Ware-ham, 7 Met. 438; Morrison v. Larrison, 1 Marv. (Del.) 211, 40 Atl. 1107; Field v. Banks, 177 Mass. 36, 58 N. E. 155; Hicks v. Steel,

126 Mich. 408, 85 N. W. 1121; Luce v. New Orange Industrial Asso. 68 N. J. L. 31, 52 Atl. 306; Bier v. Bash, 186 N. Y. 565, 79 N. E. 1101; Randlet v. Herren, 20 N. H. 102; Warder, B. & G. Co. v. Myers, 70 Neb. 15, 96 N. W. 992; Nollman v. Evenson, 5 N. D. 344, 65 N. W. 686; Dring v. St. Lawrence Twp. 23 S. D. 624, 122 N. W. 664; Scheer v. Clinton Falls Nursery Co. 20 N. D. 1, 124 N. W. 1115.

No objection to the *form* of this action was made in the lower court. Mahon v. Fansett, 17 N. D. 104, 115 N. W. 79; Northern Shoe Co. v. Cecka, 22 N. D. 631, 135 N. W. 177.

The deposit was merely as security for the performance of the contract,—that the purchaser would make diligent efforts to canvass the territory and sell the cars. Carson v. Arvantes, 10 Colo. App. 382, 50 Pac. 1080, 27 Colo. 77, 59 Pac. 737; 1 Sedgw. Damages, 410; Traub-Dittmar Constr. Co. v. Hartman, 61 Misc. 173, 112 N. Y. Supp. 919, 133 App. Div. 889, 117 N. Y. Supp. 1149; Home Land & Cattle Co. v. McNamara, 49 C. C. A. 642, 111 Fed. 822; Drew v. Pedlar, 87 Cal. 443, 22 Am. St. Rep. 257, 25 Pac. 749.

Actual damages in this case, if any existed, were not difficult to fix, and this issue does not come under § 5370, Revised Codes 1905. Pacific Factor Co. v. Adler, 90 Cal. 110, 25 Am. St. Rep. 102, 27 Pac. 36; Seim v. Krause, 13 S. D. 530, 83 N. W. 583; Mansur-Tebbetts Implement Co. v. Willet, 10 Okla. 383, 61 Pac. 1066; Condon v. Kemper, 47 Kan. 126, 13 L.R.A. 671, 27 Pac. 829; Wilkes v. Bierne, 68 W. Va. 82, 31 L.R.A.(N.S.) 937, 69 S. E. 366; Squires v. Elwood, 33 Neb. 126, 49 N. W. 939; J. I. Case Threshing Mach. Co. v. Frank, 105 Minn. 39, 117 N. W. 229.

The appellant by his amended answer recognizes the contract as a sale, and has made an election of his remedy, and is bound by it. Tiedeman, Sales, §§ 331, et seq.; Blackburn, Sales, chap. III, ** 445, et seq.; 35 Cyc. title "Sales" subd. VIII, Remedies of Seller.

Appellant has suffered no actual damages and has no claim on the deposit money. McCormick Harvesting Mach. Co. v. Balfany, 78 Minn. 370, 79 Am. St. Rep. 393, 81 N. W. 10; Mead v. Rat Portage Lumber Co. 93 Minn. 343, 101 N. W. 299; D. M. Osborne & Co. v. Martin, 4 S. D. 297, 56 N. W. 905; Morris v. Wibaux, 159 Ill. 627, 43 N. E. 837; Canham v. Plano Mfg. Co. 3 N. D. 229, 55 N. W. 583; 35 Cyc. 52L.

The rule is the same where damages for breach, and not the price of the goods sold, are sought to be recovered by the seller. Thick v. Detroit, U. & R. R. Co. 137 Mich. 708, 109 Am. St. Rep. 694, 101 N. W. 64; Norrington v. Wright, 115 U. S. 188, 29 L. ed. 366, 6 Sup. Ct. Rep. 12; Sweetser v. Mellick, 4 Idaho, 201, 38 Pac. 403; Gardner v. Caylor, 24 Ind. App. 521, 56 N. E. 134; Offutt v. Wells, 42 Ala. 199; Newbery v. Furnival, 56 N. Y. 638; Neis v. Yocum, 9 Sawy. 24, 16 Fed. 168; Parish v. United States, 8 Wall. 489, 19 L. ed. 472; Smoot's Case, 15 Wall. 36, 21 L. ed. 107; Ames v. Moir, 138 U. S. 306, 34 L. ed. 951, 11 Sup. Ct. Rep. 311; 35 Cyc. 534, and notes; Fountain City Drill Co. v. Lindquist, 22 S. D. 7, 114 N. W. 1098; Scheer v. Clinton Falls Nursery Co. 20 N. D. 1, 124 N. W. 1115.

Fisk, J. On October 8, 1910, the parties entered into the following written agreement:

This agreement, made this 8th day of October, A. D. 1910, at Lakota, N. D., between the Interstate Motor Car Company, party of the first part (hereinafter known as the distributers), and W. D. Gile, party of the second part (hereinafter known as the dealer); witnesseth:

(1) That the distributers hereby grant unto said dealer the right to sell Interstate cars in the following described territory, to wit: Williams, McKenzie, Billings, Bowman, Burke, Montraile, Dunn, Stark, Hettinger, and Adams counties. (The Interstate Motor Car Company reserves the right to cancel any of the above counties if no agency appointed on or before June 1, 1911, by the dealer.)

(2) The distributers hereby agree to sell to the dealer Interstate cars with standard catalogue equipment at a discount of 20 per cent from list price thereof. The price of Interstate cars—in standard 'touring,' 'roadster,' or 'demi-tonneau' types, with full lamp equipment, magneto, horn, and tools, shall be $1,750 f.o.b. factory at Muncie, Indiana.

(3) The distributers reserve the right to change all prices and discounts mentioned in this contract, upon two weeks' notice in writing, duly mailed to the dealer.

(4) No order for automobiles, automobile parts, or attachments shall be binding upon said distributers unless said order shall clearly specify

kinds and styles, dates of shipment, etc., and unless it is accepted by the distributer at least thirty days prior to date of delivery, and all such orders and acceptances shall be in writing and subject to delays caused by strikes, fires, or other causes beyond manufacturer's control.

(5) The failure of the distributers to enforce at any time any of the provisions of this agreement, or to exercise any option which is herein provided, or to require at any time performance by the dealer of any of the provisions hereof, shall in no way be construed to be a waiver thereof, nor in any way affect the validity of this contract or any part thereof, or the right of the distributers to hereafter enforce the same.

(6) The distributers shall not be liable for any failure of performance on its part when said failure of performance shall be due to fire, strike, insurrection, or any other cause beyond its control.

(7) It is expressly understood and agreed that the title to each and every automobile, and to all automobile parts furnished to said dealer, under the terms of this agreement, shall be and remain in the distributers' name until same is paid for in full, in cash.

(8) It is further agreed that the distributers shall not be liable to the dealer for any loss or damages to automobiles or other goods furnished under this contract, while the same are in the custody and possession of any railroad, express company, or other common carrier in transit.

(9) All claims on account of material must be made by the dealer within sixty days after the delivery of automobiles, etc., to the dealer's customers, and upon any such material being submitted to the manufacturer properly tagged, giving the motor number of the automobile from which the same was taken, the name and address of the owner, and the date of sale when new, and the date when said part was taken from said automobile, or gratuitous exchange of part was made, and such other information as may from time to time be prescribed by the manufacturer; manufacturer agrees to replace such parts gratis, if, upon examination of the same it shall, in the opinion of the manufacturer, be found to be defective in workmanship and material; the freight or express charges on said part so returned to the manufacturer for credit or replacement must in all cases be prepaid by the dealer; and all claims on account of defective tires, rims, coils, radiators, and other equipment not manufactured by the Interstate Automobile Com-

pany, must be made by said dealer to the respective manufacturers of such tires, rims, coils, radiators, and other equipment.

(10) The dealer hereby orders and agrees to take and pay for not less than 50 Interstate cars of the types and on the dates as hereinafter indicated.

Touring Car.

| | | |
|---|---|---|
| Jan. | 1911 | Three |
| Feb. | 1911 | Three |
| Mar. | 1911 | Three |
| Apr. | 1911 | Six |
| May | 1911 | Nine |
| June | 1911 | Twelve |
| July | 1911 | Eight |
| Sep. | 1911 | |
| Oct. | 1911 | |
| Nov. | 1910 | Three |
| Dec. | 1910 | Three |

(11) The dealer has deposited with the distributers the sum of $1,250 to apply at the rate of $25 per car on the cars ordered as above; said sum will be credited by the distributers to the dealer, and will be repaid as cars are delivered and paid for, at the same rate, except that any or all of said deposit may, at the option of the distributer, be credited against any parts or open account due the distributers from the dealer, and the balance, if any, will be credited *pro rata,* on each car taken. The balance of the price of each, over and above the amount prepaid and credited against it as aforesaid, shall be paid at the time of shipment or on presentation of sight draft with bill of lading attached.

(12) The dealer further agrees:

(a) That he will maintain at all times the manufacturer's list price for automobiles and parts, and that he will not by rebates, allowances, donations, or by other means, evade the spirit of this clause.

(b) That at the end of each week the dealer will report to the distributers the names and addresses of all purchasers of Interstate cars, together with factory number of same.

(c) That he will faithfully represent and advertise such automobiles; make all reasonable efforts to promote and increase the sales

thereof; keep in stock at least one of Interstate manufacture, for the sole purpose of demonstrating and exhibiting to prospective purchasers, and maintain the same in good order and repair.

(d) That he will respond promptly to all inquiries respecting the purchase of said automobiles; keep the distributers fully informed as to the number of inquiries for, and sales of automobiles within said territory, and any other matters affecting the interests of the distributers in connection with this agreement; sell all vehicles covered by this agreement and all their parts and attachments at the selling prices, according to lists thereof to be furnished by said distributers; that he will do nothing that will in any way infringe, impeach, or lessen the value of any of the patents under which the manufacturer makes such vehicles; and will not sell nor offer for sale, directly or indirectly, any new automobiles or motor cars, except the following lines, the sale of which, by the dealer, is hereby approved by the distributers.

(g) That if this contract to take and pay for cars is unfulfilled by the dealer, the distributers may retain the amount of any deposits remaining to his credit, as liquidated damages for the breach thereof.

(h) That all parts ordered shall be shipped C. O. D.

(i) That he will not materially change any car manufactured by the manufacturer, nor assign this contract or any rights hereunder, without the written consent of the distributers.

(j) That he will not sell any new car manufactured .by the manufacturer of Interstate cars, or any parts or accessories thereof, in any territory other than that above described; except that, should any person or persons residing elsewhere come unsolicited to the dealer's place of business, sales may be made for the delivery of cars off the floor; provided, however, that should any reduction in price, rebate, donation in the form of freight charges, extra equipment, or other special inducement, expressed or implied, be offered to effect such sale, the same shall be construed as a violation of the spirit of this contract, and the distributers may, after hearing both sides, arbitrarily so decide and .require the dealer to pay the full or any part of the discount to the dealer in whose territory the buyer may have his legal residence.

(13) It is mutually understood and agreed:

(a) That this contract shall be interpreted and construed according to the laws of the state of North Dakota.

(b) That this contract shall expire by its own limitation on September 1, 1911, or may be canceled by either party upon thirty days' written notice, given to the other by registered letter, and such cancelation of this contract shall operate as a cancelation of all orders for automobiles, automobile parts, or attachments which may have been received from said dealer and which have not been shipped prior to the date when such cancelation takes effect, but shall not cancel any standing accounts for automobiles, parts, etc.

(c) That after the termination of this agreement for cause or as above prescribed, the continuance of the sale of such automobiles or the referring of inquiring by the distributers to the dealer, shall not be construed as a renewal of this agreement for any specified period of time, but all orders accepted by the distributers and all sales made by the dealer after such termination of this contract shall be governed by the terms and conditions thereof.

This agreement, to be valid, must bear the signatures of the president and secretary of the Interstate Motor Car Company.

In witness whereof, the said parties hereto have signed this agreement the day and year first above written.

Interstate Motor Car Co.,
(The Distributers.)

Geo. L. Barrett,               President.
————————————,               Secretary.
W. D. Gile
(The Dealer.)

Pursuant to the terms of such contract, plaintiff deposited with defendant the sum of $1,250. Whether such deposit was in cash or by the transfer to defendant of certain personal property is not here material. That the contract in this respect was complied with by plaintiff is conceded. It is also conceded that plaintiff during the entire life of such contract exercised, unmolested, the right conferred on him by such instrument of canvassing the territory therein, consisting of ten counties in the northwestern portion of this state, for prospective purchasers of Interstate cars, and that defendant in good faith lent him friendly assistance in such work. It is also undisputed that plaintiff failed to secure a single order, and that as a consequence he not only

failed to order and pay for 50 cars which he agreed to do by the terms of such contract, but he did not order or pay for any of such cars whatever. It cannot be questioned but that such contract was fairly and in good faith entered into by both parties, and that they both in good faith endeavored to perform the same, also that the only breach thereof was occasioned by plaintiff's inability and failure (whether through incompetency or otherwise being immaterial) to find purchasers so as to enable him to order and pay for the 50 cars aforesaid. During the entire time in which such contract was in force, no attempt was made by either party to rescind, cancel, or treat the contract at an end for any reason whatsoever, both apparently treating the same as in all respects a valid and enforceable contract. The evidence also tends to show that during all such period of time defendant held itself ready, able, and willing to furnish such cars as plaintiff might order, upon the terms stated in the contract.

Shortly after the expiration of the contract, and on September 25, 1911, this action was commenced to recover, as the complaint alleges, as for money had and received, the sum of $1,000, being the amount claimed by plaintiff to have been deposited with defendant under such contract. Defendant answered, setting up the contract aforesaid, and alleging that the sum claimed in the complaint was deposited with it pursuant to such contract; alleging plaintiff's breach thereof and asserting its right to retain such deposit as liquidated damages pursuant to the terms of the agreement; and also alleging facts tending to show that, by plaintiff's breach, defendant suffered damages in a sum in excess of the amount of such deposit. Such answer also alleges by way of counterclaim a cause of action in its favor and against plaintiff upon a promissory note for $350 and interest, executed and delivered by defendant to plaintiff on October 8, 1910. At the conclusion of the testimony the trial court directed the jury to return a verdict in defendant's favor, both on the cause of action alleged in the complaint and on the defendant's counterclaim aforesaid. Thereafter the trial court granted plaintiff's motion for a new trial, and from the order defendant appeals. The sole error assigned is the granting of the new trial. The grounds for making such order appear in a memorandum decision set out in the abstract, and in substance are that error was committed in directing the verdict for defendant, because of lack of proof that defendant ever

offered to deliver the cars to the plaintiff under the contract; the court saying: "If plaintiff had refused to accept the cars before time of delivery and acceptance had arrived, defendant would not be required to offer to perform as a prerequisite to relief by recovery of damages." The learned trial court evidently misconstrued defendant's answer wherein it alleged such damages merely as defensive matter, and not by way of counterclaim. Defendant did not seek to recover such damages under the contract on account of plaintiff's breach thereof, but it merely sought to plead and show such damages by way of defense. In other words, it was not incumbent on it to allege such matters at all, for the same or any other facts tending to show a want of equity in plaintiff's claim were provable under the denials in the answer. 27 Cyc. 881, and cases cited in note 16.

In Hawks v. Hawks, 124 Mass. 457, in speaking on this subject the court, among other things, said: "The general denial called on the plaintiff to prove not only the receipt of the money by the defendant, but that he received it under circumstances which gave the plaintiff a right to recover it. The defendant was entitled, under his answer, to establish any facts which would disprove the plaintiff's case. It was open to him to show that he did not receive the money, and that, if he did receive it, he was under no obligation to pay it to the plaintiff."

In the first opinion we reached a conclusion favorable to respondent. A rehearing was ordered, and the case has been reargued, and upon further consideration we feel constrained to depart from the views formerly expressed, and to now hold that the order granting such new trial was erroneous. The following reasons prompt us to arrive at this conclusion:

The action being for money had and received, it concededly follows that no recovery can be had by plaintiff without showing facts from which the law raises an implied promise on defendant's part to repay to plaintiff such deposit. In order to raise such an implied promise it is elementary that facts must be shown from which it is made to appear that, in equity and good conscience, defendant ought not to retain such deposit. Plaintiff has established such a showing, provided his promise be sound, that he has received no consideration for such deposit, or that such consideration has wholly failed. Numerous au-

thorities are cited by him where recoveries were sustained because of failure of consideration. Such authorities, no doubt, announce a correct rule, but are they applicable to the facts in the case at bar? We think not. It seems to be the contention of respondent's counsel that such contract merely amounts in substance and effect to an executory agreement for the purchase and sale of 50 automobiles, and that such deposit was exacted and paid as and for a part payment in advance on the purchase price, in the nature of a guaranty or earnest money for the faithful performance thereof by respondent, the same to be credited at the rate of $25 on each car when purchased, and that defendant breached such contract by failing to deliver or tender for delivery to plaintiff, any of the cars. That as a consequence plaintiff received no consideration for the deposit, or that such consideration has wholly failed through the fault of defendant. The fallacy of such contention is made apparent from an inspection of the contract and a review of the evidence. What, in brief, are the salient features of this contract? In consideration of plaintiff's promise to purchase and pay for at least 50 Interstate cars at stated times, and to advance to defendant such deposit of $1,250, to be applied on the purchase price as above stated, defendant granted to plaintiff for a specified period of time the exclusive right to sell such cars in ten counties of the state, and obligated itself to furnish such cars as plaintiff might order at certain discounts from list prices. This, in the eye of the law, was a valuable right. That it ultimately proved to be valueless to him does not justify the claim that such right was of no value in the eye of the law. If plaintiff had been successful in securing purchasers of cars, such right or privilege might have resulted in great benefit and profit to him. He was not restricted to the sale of 50 cars. No limitation as to the number was stipulated. How, therefore, under any possible theory can he properly ignore this important provision of the contract, and successfully assert that the entire consideration for this advance payment or deposit has failed because no cars were in fact sold? Was not the grant of this large territory something of value which defendant parted with, and did not plaintiff, during the entire period, enjoy such right to the exclusion of defendant and others? That he did, must be conceded. Therefore, unless it can be said that defendant refused to carry out the contract in respect to furnishing cars when ordered, or in

some other respect breached the contract on its part, how can a court say that in equity and good conscience defendant ought to repay such deposit? We assert, without the fear of successful contradiction, that no court ever held under such facts that an implied promise was created by law on defendant's part to make such repayment. It is only in cases where the contract has been breached by the vendor that the vendee has been held entitled to recover payments made on the purchase price, with the exception of cases involving facts and legal principles not present nor applicable in the case at bar. It cannot be denied that defendant, during the entire life of the contract, did everything it could reasonably be expected to do to carry out its provisions. On the contrary, the proof discloses that the plaintiff breached the contract by failing and neglecting to purchase 50 cars, or any cars, as he had promised and agreed to do. True, he in good faith attempted to fulfil the contract, and for some reason failed, but does this fact redound to his benefit by raising an equity in his favor? Are we to announce a precedent that he who enters into a losing bargain not induced by the fraud or the deceit of the other party, and who exercises rights conferred on him thereunder during the entire life of the contract, may thereafter successfully assert that in equity and good conscience he is entitled to a return of all that he parted with under the agreement? Such a precedent would, we fear, stand alone in the jurisprudence of this country.

Nearly a century ago the supreme court of New York in the case of Ketchum v. Evertson, 13 Johns. 359, used the following language, the correctness of which has, we think, never been challenged:

"It may be asserted, with confidence, that a party who has advanced money, or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfil all his stipulations, according to the contract, has never been suffered to recover for what has been thus advanced or done. The plaintiffs are seeking to recover the money advanced on a contract, every part of which the defendant has performed, as far as he could by his own acts, when they have voluntarily and causelessly refused to proceed, and thus have, themselves, rescinded the contract. It would be an alarming doctrine, to hold that the plaintiff might violate the contract, and, be-

cause they chose to do .so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have."

The same court in a recent case announced a rule which seems to be applicable on principle to the case at bar, although in that case it was alleged that the defendant wrongfully breached the contract. The facts were that plaintiff took out five policies of life insurance with the defendant company, and, after the policies had been in force for sometime, the defendant forfeited the same for nonpayment of a premium, and plaintiff asked to recover as for moneys had and received by defendant to plaintiff's use, all premiums paid by her on the policies. The court held she could not recover, saying, among other things: "The question which arose upon the motion of the defendant's counsel for dismissal of the complaint was solely with regard to the plaintiff's right to recover in assumpsit as for money had and received by the defendant to her use, the premiums paid, and we concur .in the justice's decision that the plaintiff had mistaken her remedy. Granting that upon the defendant's breach the plaintiff could treat the contract, with regard to each of the policies, as determined, it does not follow that the defendant was bound, *ex æquo et bono,* to restore the premiums received by it, for which, in part at least, the plaintiff had had value in the risk assumed by the defendant. Plainly, the plaintiff could not predicate a rescission of the contract of the defendant's breach, without restitution by her of what she had received under the contract; and a contract of life insurance being essentially indivisible, in point of performance, by either of the parties thereto, . . . such restitution was, in the nature of things, impossible. . . . The case at bar should be distinguished from a case where the failure of consideration for the premiums paid is entire, in that the risk to be assumed by the insurer under the policy never attached; the policy being avoided for noncompliance with a condition precedent, fraud, or other causes." Skudera v. Metropolitan L. Ins. Co. 17 Misc. 367, 39 N. Y. Supp. 1050.

The contention that this deposit cannot be retained because the stipulation in the contract authorizing its retention is in the nature of a penalty, which the law abhors and the Code expressly prohibits, is untenable for the reason that the actual damages caused by plaintiff's

breach of the contract are not susceptible of proof, and consequently the contract comes within the exception provided for in § 5370, Revised Codes 1905, which provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage." If, as respondent's counsel argue, the contract was one merely for the purchase and sale of 50 automobiles, their contention would have merit. But, as we have before stated, and as the instrument clearly provides, this is but one feature of the bargain. We are not at liberty to segregate this stipulation from the balance of the contract and say that it is the entire agreement. As a consideration for the exclusive right granted him to sell Interstate cars in these ten counties, and the defendant's undertaking to furnish cars as ordered at certain stipulated discounts from list prices, plaintiff agreed not only to purchase and pay for at least 50 cars, but he also agreed, among other things, to "faithfully represent and advertise such automobiles; make all reasonable efforts to promote and increase the sales thereof; keep in stock at least one of Interstate manufacture, for the sole purpose of demonstrating and exhibiting to prospective purchasers," etc. Clearly, therefore, it was within the contemplation of the parties that more than 50 cars might be placed in such territory by plaintiff under the contract, and, further, that defendant would or might derive benefits thereunder in addition to profits which it might make on sales of cars by plaintiff during the life of the contract. The parties, we think, had the right, therefore, to agree upon liquidated damages, for it is obvious that "from the nature of the case it would be impracticable or extremely difficult to fix the actual damage" caused to defendant by a breach thereof. But in any event plaintiff is not entitled to recover such deposit, even if it be treated as a penalty instead of liquidated damages; for the proof shows that the actual damages suffered by defendant on account of plaintiff's failure to perform exceed the amount of such deposit. Krausse v. Greenfield, 61 Or. 502, 123 Pac. 392; Bilz v. Powers, 50 Colo. 482, 38 L.R.A.(N.S.) 847, 117 Pac. 344.

This brings us back to the original question as to whether the stipulated consideration going to plaintiff has failed. Just how and in what manner it has failed we are wholly at a loss to comprehend. Plaintiff, as before stated, operated under it during the entire term.

That he accomplished nothing of substantial benefit to him or to the defendant is not in the least controlling. It must be admitted that defendant parted with a consideration by conferring upon plaintiff the right to solicit and make sales of cars in these ten counties during the year, and it must also be conceded that such consideration has not and of course cannot be restored to it by plaintiff. Nor can defendant be placed *in statu quo*.

The theory upon which our first decision was based was that no consideration was received by plaintiff, because the contract was wholly executory and lacked mutuality. Consequently, it was a mere *nudum pactum*. We relied upon and erroneously misapplied certain authorities, including Velie Motor Car Co. v. Kopmeier Motor Car Co. 114 C. C. A. 284, 194 Fed. 324, and Oakland Motor Car Co. v. Indiana Automobile Co. 121 C. C. A. 319, 201 Fed. 499. These cases are not in point, for the plain reason that under their facts it appears that no part of the contracts had been executed and no benefits had been taken or consideration parted with thereunder.

In the Velie Case the manufacturer sued the dealer for damages for the latter's failure to perform the contract, he having repudiated the contract shortly after it was entered into.

In the Oakland Case the dealer sued the manufacturer to recover for loss of profits occasioned by the latter's repudiation of the contract shortly after it was entered into. Both decisions are predicated upon the fact that the contract was executory.

The case at bar is to be differentiated from those cases in the important facts that, even conceding that the contract at the time it was made was nonenforceable because of lack of mutuality, nevertheless, the parties saw fit during the entire life of the contract to treat it as a valid and subsisting contract governing the rights of the parties.

This, of course, they had a perfect right to do, for it is not contended that the contract was illegal and such an one as the parties could not recognize and carry out. To the extent, therefore, that the parties acted under and performed the came it is valid and enforceable, and must measure their respective rights. See Peoples v. Evens, 8 N. D. 121, 77 N. W. 93; Fuller v. Rice, 52 Mich. 435, 18 N. W. 204; Pfeiffer v. Norman, 22 N. D. 168, 38 L.R.A.(N.S.) 891, 133 N. W. 97; Martinson v. Regan, 18 N. D. 467, 123 N. W. 285; Peoples v. Citizens'

Nat. L. Ins. Co. 11 Ga. App. 177, 74 S. E. 1034; Grove v. Hodges, 55 Pa. 504, 2 Mor. Min. Rep. 698.

The theory upon which this court in its first opinion decided the case was not urged or relied upon by plaintiff's counsel, either in the district court or in their printed brief in this court, but, upon oral argument on rehearing, they adopted such theory for the first time. The fallacy of such theory is, we think, quite apparent when we consider the fact that both parties recognized and acted under the contract during its entire existence. If the contract was wholly executory on both sides and voidable for lack of mutuality, an entirely different situation would be presented, but plaintiff saw fit to avail himself of the privileges awarded him under the contract, and because he was unsuccessful in making sales of cars he now seeks to recover back what he parted with under the contract, although compelled to admit that defendant lived up to the contract in all respects in so far as plaintiff enabled it to do so.

The trial court was, we think, clearly in error in holding that defendant failed in its proof. It had no burden of proof to meet in order to defeat plaintiff's recovery. It did not seek to recover damages under the contract, but it merely sought to defeat plaintiff's recovery of such deposit by showing that it was actually damaged by plaintiff's breach to an amount greater than the deposit, thereby disproving any equity in plaintiff's claim. We think the proof amply sufficient for such purpose, but granting, for the sake of argument, that it failed, still plaintiff cannot recover in any event on the conceded facts, for the reason, as above stated, that he has failed to show that, in equity and good conscience, he is entitled to a return of the payments made by him. He breached the contract, while defendant faithfully complied therewith as far as plaintiff would permit it to do. Furthermore, as before stated, plaintiff is not in a position, even if willing, to restore to defendant what it parted with under the contract, so as to put it *in statu quo*.

"The action for money had and received proceeds on the ground of a disaffirmance of the contract and a restitution of the thing given in exchange. And the other party to the contract must be placed in as good a position as he was before the contract was entered into." 27 Cyc. 871, and cases cited. How can plaintiff at this late date disaffirm

the contract which has lived its allotted life, during which time both parties acted under it? That plaintiff's action to recover such deposit as money had and received will not lie under the undisputed facts is elementary. In support of our views we deem the citation of authorities unnecessary, but see generally the article entitled, "Money Received." in 27 Cyc. 847–885. It is idle to contend from this record that defendant was in default in any respect. At no place in his testimony does plaintiff make any such claim. On the contrary, he testified in effect that defendant's officers, so far as he could judge from what they said and did, were anxious to have him make good under the contract, and that he did not know as they ever at any time put any hindrance in his way of making good under the contract. Certainly, in the light of the admitted fact that plaintiff wholly failed to secure purchasers of cars, and was unable to take and pay for any, no duty rested upon defendant of tendering delivery. Respondent evidently realized at the trial that he was confronted with a serious question under the facts regarding his right to recover such deposit as money had and received, for he sought to prove a conversation with Barrett at the time the written contract was executed to show, contrary to the express stipulation of such contract, that Barrett assured him in effect that such stipulation meant nothing, and that any balance of such deposit remaining at the end of the season was to be returned to respondent. There are two answers to such theory: First, this testimony was objected to and was clearly inadmissible as tending to vary the terms of the written contract; and, second plaintiff's action, being for money had and received, is necessarily predicated upon an *implied* promise to repay such money. If an express promise existed, the action should be based thereon. Furthermore, of what value as a guaranty of respondent's faithful performance of the contract would such deposit be if, as respondent undertook to prove, the same, or any balance remaining of such fund, was to be returned unconditionally?

The order appealed from is reversed.

Goss, J. (dissenting). With due deference to the opinion of the majority, the writer cannot concur therein. The real equities of this case seem to me to have been ignored and misplaced, while the decision in effect causes equity to work a forfeiture, something it abhors. This

result has come from what seems to me to be the erroneous assumption that the contract in question was such in law, and created legal obligations, instead of it being plaintiff's mere written offer, acceptable by its very terms only by performance and to the extent only of actual performance, and until performed wholly unilateral, and in any event terminable practically at the will of the parties, and therefore without performance, never legally obligating either party to abide by its terms; that consequently, in a strict legal sense, it had no lifetime nor term of existence, nor period for performance, and having none it could not lapse, and the failure to cancel it by either party could neither retroactively, as in effect held, nor otherwise, change the legal status of the parties. From the viewpoint of the writer the majority opinion has magnified mere privileges permitted into legal rights granted, and, from that as a basis, deduced resulting erroneously assumed obligations.

In the early summer of 1911, Gile worked his territory to procure purchasers, but a crop failure occurred in all the territory covered in his contract. Of the uselessness of expending effort in attempting sales under such circumstances defendant had notice, as is apparent from its telegram in evidence, dated July 18th, sent from Lakota to the plaintiff at Williston, and requesting him to come down there to make sales, where, because of rains, the prospects were better. It is true that the contract was never canceled, as plaintiff could have done at any time, according to its terms, on thirty days' notice, if in fact it ever obligated plaintiff at all. But the reason for noncancelation fully appears in the testimony. Plaintiff testified: "I told Mr. Barrett at the time that 50 cars was an awful lot to contract for, and what an awful bunch of money; and he says: 'You have a large territory, and if you need the cars, why you are sure you will get what is in the contract;' 'but,' he says, 'it doesn't make any difference whether you take any of them or not,' and the money was to be credited on the contract, as I ordered the cars in it, and the balance at the end of the season was to be turned over to me. He says: 'I want to know that you are going to work that territory.'" Defendant led plaintiff to believe, at the very inception of the contract, that his money would be returned if the cars were not taken, and this belief was but reasonable; for under the terms of the contract itself the deposit was to be returned to plaintiff as a credit

on cars as taken, and if the contract was canceled by defendant the money must also be returned. These provisions render the forfeiture clause of the contract ambiguous and susceptible of explanation by proof of an express oral construction given it by the parties contemporaneous with its execution and delivery, as to the return or non-return of the deposit money under the facts before us. This testimony is therefore admissible for its bearing upon the reason why the contract was allowed to lapse without cancelation, if importance be given the fact of failure to cancel. Not that this is important in the opinion of the writer. But it seems so much importance has been placed thereon in the majority opinion that apparently the decision has turned on plaintiff's failure to exercise his right of cancelation, while the reason for such failure has been utterly ignored. It is evident that plaintiff relied implicitly upon receiving fair, instead of unconscionable, business treatment from defendant. That his deposit of $1,250 would be held back by it as forfeited, he evidently never contemplated for a moment.

The main opinion assumes, as a premise for the conclusion reached, that by this alleged contract plaintiff procured a right he did not prior thereto possess, to wit, the right to canvass and make sales in certain territory, and this presumably was of some value, and as such was a consideration sufficient to support the promise of plaintiff to canvass said territory and make sales therein, and as rendering the contract mutual, and as based upon a sufficient and adequate existing consideration. It is true that if there was a right granted by defendant to plaintiff, even though of little value, it will support the contract and amount to a valid consideration, the law not weighing the adequacy of consideration, but assuming that the parties have done so in entering into the agreement. But let us see whether at this time defendant parted plaintiff with anything of value, either as a forbearance or a grant. Assuming this contract to be wholly executory, which question assumed is treated later, its validity and binding force as a contract, dependent upon whether a valuable consideration has been passed, must be determined as of the time when it is made. See § 207, vol. 1, of Elliott on Contracts (1913) under a discussion of valuable consideration, reading: "Whether the contract rests upon a valuable consideration must be determined by the conditions as they exist when it is made, not as

they may be at some subsequent time." Citing Casserleigh v. Wood, 56 C. C. A. 212, 119 Fed. 308. Continuing from the same author: "In the absence of any sufficient consideration, the law supplies no means and affords no remedy to compel the performance of a simple executory agreement made without consideration; such a contract is a *nude pact,* and not binding in law, no matter how strongly it may appeal to the conscience." Citing many cases. And this is but the gist of the reasoning of our own court in Knudtson v. Robinson, 18 N. D. 12, 118 N. W. 1051; and Silander v. Gronna, 15 N. D. 552, 125 Am. St. Rep. 616, 108 N. W. 544. With this in mind an examination of the contract entered into October 8, 1910, shows a delivery of a designated number of cars each month for nine months, beginning November, 1910, to be made by defendant. Had the contract expressly stipulated defendant should deliver, and had plaintiff given orders October 8th for the November instalment of three cars, they were not deliverable until such time in November as defendant should elect, and it could, therefore, have made delivery November 30th, and literally complied with the terms of the contract. Hence November 30th was the first date at which a delivery was due or defendant be in default, assuming the contract to be binding. Viewing it as of the date when the parties were entering into it, October 8th (the rule under above authorities), as a contract the first instalment of which was not to be performed until November 30th, or fifty-two days after the date of the agreement, with a reservation in defendant of "the right to change all prices and discounts mentioned in this contract upon two weeks' notice in writing, duly mailed to the dealer" (¶ 3), and the other reservation to both parties that the contract (§ b. of ¶ 13) "may be canceled by either party upon thirty days' written notice given to the other by registered letter, and such cancelation of this contract shall operate as a cancelation of all orders for automobiles . . . which have not been shipped prior to the date when such cancelation takes effect;" certainly on the signing of this agreement no obligation then arose against either party in favor of the other, as either could have forthwith canceled without assigning cause, and such cancelation would have, according to its terms, canceled the entire so-called contract, including any privilege conferred by defendant upon plaintiff to canvass the territory or any part of it, as well as that portion of the agreement contemplating the purchase and sale of

27 N. D.—9.

50 cars, including the three cars mentioned in the first instalment. Hence, in order for an obligation to arise under this instrument, it must be created from something taking place after it has been executed, and this in itself is the test of, as well as a conclusive demonstration of, want of mutuality of contract at the time of the execution and delivery of the instrument in question. Velie Motor Car Co. v. Klopmeier Motor Car Co. 114 C. C. A. 284, 194 Fed. 324; Oakland Motor Car Co. v. Indiana Automobile Co. 121 C. C. A. 319, 201 Fed. 499. All that defendant needed to do to thus avoid liability was to raise the prices in the first instance, under the third paragraph, to the full amount of the list price, and fail to fill the orders. Or it could have delayed filling the orders or transmitting them to the company, and given the thirty-day notice of cancelation required by ¶ 13, and unquestionably it would have been exonerated from all liability. Oakland Motor Car Co. v. Indiana Automobile Co. supra; Wheaton v. Cadillac Automobile Co. 143 Mich. 21, 106 N. W. 399. And what was true immediately after the signing of the contract was true throughout the entire so-called lifetime of it. 121 C. C. A. 319, 201 Fed. 499; Cummer v. Butts, 40 Mich. 322–325, 29 Am. Rep. 530, 114 C. C. A. 284, 194 Fed. 324. At no place in the contract has the defendant obligated itself, in all events, to deliver plaintiff a single car; and, of course, it not being bound, the plaintiff is not. And it is immaterial whether this purported contract be considered one of agency or of purchase and sale, or both, of cars; it is equally unenforceable in either event at any time for want of mutuality of contract. 114 C. C. A. 284, 194 Fed. 324–331. The principle is well stated in the note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 540, at page 543, et seq. "If there is no promise at all by one party, or if, though both have promised something, the promise of one is void, the promise of the other has no consideration to support it, and is therefore void. This is what we mean by 'want of mutuality in contract.' There can be no binding bilateral contract unless both of the parties are bound. There must be mutual binding promises, for mutuality of obligation is essential to supply the element of consideration. The rule of law that a promise is a good consideration for a promise requires that there should be an absolute mutuality of engagements, so that each party may have an action upon it or neither will be bound. Stiles v. McClellan, 6 Colo. 89. The promises,

to constitute a consideration for each other, must be concurrent or become obligatory at the same time, otherwise each will be without consideration at the time it is made, and both will therefore be *nuda pacta.* . . . Keep v. Goodrich, 12 Johns. 397; Tucker v. Woods, 12 Johns. 190, 7 Am. Dec. 305; Buckingham v. Ludlam, 40 N. J. Eq. 422, 2 Atl. 265; Utica & S. R. Co. v. Brinckerhoff, 21 Wend. 139, 34 Am. Dec. 220." The right of arbitrary cancelation being reserved to both parties, neither was bound to perform. 121 C. C. A. 319, 201 Fed. 499; 114 C. C. A. 284, 194 Fed. 324; 40 Mich. 322, 29 Am. Rep. 530; American Agricultural Chemical Co. v. Kennedy, 103 Va. 171, 48 S. E. 868; McKinley v. Watkins, 13 Ill. 140; Houston & T. C. R. Co. v. Mitchell, 38 Tex. 85; § 10, under title "Contracts" in Decen. Dig. and §§ 21–40, under same title in Century Dig. citing many cases. For a case construing an automobile contract very similar to this, see Oakland Motor Car Co. v. Indiana Automobile Co. 121 C. C. A. 319, 201 Fed. 499, which case would be parallel in fact had the plaintiff immediately made the sales and submitted the orders, and defendant company exonerated itself from liability by canceling under the stipulation contained in ¶ 13. It was there held that the right of arbitrary cancelation utterly destroyed the mutuality of contract, and left no cause of action against the distributers. Of course, if this contract fails to bind the distributers, defendant company, it fails in mutuality, and the dealer, Gile, is also absolved from liability. In the face of these provisions, neither party under this contract can be bound while the contract remains executory, as it is. See also Chicago & E. R. Co. v. Dane, 43 N. Y. 242; Maynard v. Brown, 41 Mich. 298, 2 N. W. 30; Stembridge v. Stembridge, 87 Ky. 91, 7 S. W. 611; Cool v. Cuningham, 25 S. C. 136; Atlee v. Bartholomew, 69 Wis. 43, 2 Am. St. Rep. 103, 33 N. W. 110; Lowber v. Connit, 36 Wis. 183; 9 Cyc. 327; Velie Motor Car Co. v. Klopmeier Motor Car Co. 114 C. C. A. 291, 194 Fed. 324. Under similar contentions made in the Velie case to those here, that the right to canvass for sales enjoyed was valuable and remedied a lack of mutuality, the Federal circuit court says: "Unless the defendant [occupying our plaintiff's position] received a consideration for its undertakings by being given the exclusive right to sell within the given territory, the contract lacks mutuality. But it will be seen that such right, if any, was made subject to plaintiff's right to arbitrarily, and without assign-

ing any cause, cancel the contract. Defendant might well decline to go to the expense and trouble of advertising and developing the territory named when its rights might at any time be terminated. Whatever construction should be given to the contract, whether it be one of sale or of agency, while it remains executory, there must be mutuality. . . . Taking into consideration the whole contract, we are of the opinion that by reason of want of mutuality the contract is, under the circumstances, unenforceable." This contract before us is skilfully drawn with the very object of avoiding obligating defendant to do anything. Hence I assert with confidence that this so-called contract was not a contract in law when executed and delivered, as it was wholly wanting in consideration. Not that there was any failure of consideration, but an utter lack of consideration. If it is necessary to cite authority to sustain and distinguish between a failure of consideration and a lack of mutuality in contract, see the able discussion of the subject in §§ 301–308, vol. 1, of Page on Contracts, under the heading of "Apparent Considerations Which Are Nonexistent," under which, at § 303, lack of mutuality is treated in part as follows: "Mutuality of obligation may be lacking in at least three different classes of cases. In the first there does not purport to be any right conferred or foreborne in return for the promise; in the second there may be some apparently valid promise which, on analysis, does not by its terms fix any legal liability on the party making it; and, in the third, the promise offered as a consideration does by its terms attempt to fix a real liability, but by reason of some extrinsic fact, as incapacity of the party making the promise, the illegality of the thing promised, and the like, no enforceable liability attaches. These three classes of cases are not distinct in principle, but only in the manner in which the lack of consideration is more or less disguised." The agreement in question is vulnerable under both first and second subdivisions. At § 304 the authority continues: "Where the parties assume to make a contract in which a promise is the consideration for a promise, and analysis shows that one of the promises does not impose any legal duty upon the party making it, such promise is not a consideration for the other promise. This is what is often meant by saying that promises must be mutual. Illustrations of this principle are an agreement that a manufacturer will sell all his goods in a given locality through A, who is to get a

specified commission, A not agreeing to do anything with reference to such sales; an employer's continuing a previous employment without being bound to continue it for any period of time, a promise to employ A where A is not bound to continue in the employment for any given period; a promise to do work assigned to the promisor where the adversary party is not bound by the promise to assign any work or to pay any compensation if no work is assigned," analogous to the agreement in question, and giving similar examples with cases cited in abundance, among which are Peek v. Peek, 77 Cal. 106, 1 L.R.A. 185, 11 Am. St. Rep. 244, 19 Pac. 227; Vogel v. Pekoc, 157 Ill. 339, 30 L.R.A. 491, 42 N. E. 386; St. Louis, I. M. & S. R. Co. v. Matthews, 64 Ark. 398, 39 L.R.A. 467, 42 S. W. 902; which with notes support the text. See also Elliott on Contracts, §§ 208–210. Notice also in the text the significance of the words "rights," "liabilities," and "obligations," as distinguished from mere license, privilege, or permission, as these latter must be the basis for any claim of defendant under recoupment or equitable defense, whichever the claim for retention of the deposit may be held to be. If said instrument did not by its terms and at the time of its execution and delivery place plaintiff under a legal obligation or a legal duty, and at the same time grant to defendant a resulting right to be breached or violated by nonperformance, he has no standing in court on the defense made. This is but another way of stating that if there was no contract or contract obligation, defendant could not be damaged, as he had no legal right that plaintiff breached. If these fundamentals be true, all discussion in the opinion of failure of consideration is as needless as it is inaccurate; likewise all comment therein about the contract, being voidable, is misleading, because there was no contract; likewise the discussion at some length of the legality of the subject-matter of contract, to the effect that the subject-matter was one that could legally be contracted about, is beside the case, because no contract that the law recognizes as such was entered into in regard thereto. Equally inappropriate is the citation of authority on the right of rescission of contract, such as the cases cited of Ketchum v. Evertson, 13 Johns. 359, 7 Am. Dec. 384; Skudera v. Metropolitan L. Ins. Co. 17 Misc. 367, 39 N. Y. Supp. 1059; Peoples v. Evens, 8 N. D. 121, 77 N. W. 93; Fuller v. Rice, 52 Mich. 435, 18 N. W. 204; Pfeiffer v. Norman, 22 N. D. 168, 38 L.R.A.(N.S.) 891, 133 N. W.

97; Martinson v. Rogan, 18 N. D. 467, 123 N. W. 285; Peoples v. Citizens' Nat. L. Ins. Co. 11 Ga. App. 177, 74 S. E. 1034; Grove v. Hodges, 55 Pa. 504, 2 Mor. Min. Rep. 698, because of no contract existing to rescind.

The decision of this case, in the first instance, turns upon whether a valid contract came into existence upon the signing and delivery of the only written agreement in the case, depending in turn on whether there was then a want of mutuality of contract, the equivalent of whether any consideration ever passed for the purported agreement, that is, whether or not that agreement by its terms was wholly lacking in or devoid of consideration, and hence in law a nullity so far as the basing thereon of legal rights or obligations or resulting liabilities for breach are concerned. I believe the agreement, at the time of its execution and delivery, was not a contract, but a mere offer, acceptable only by actual performance, and then only to the extent of such performance, inasmuch as the alleged contract is a separable one as to each monthly instalment of cars, taking the contention most favorable to defendant. "In some jurisdictions, however, such an agreement has been regarded not as an offer, but merely as an expression of willingness to negotiate. Where such theory obtains, sending in an order for goods at the specified rates is not an acceptance of a prior offer, but is itself an offer which may be rejected," quoting from Page on Contracts, § 307 citing Page, Contr. § 26, and Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. 57 L.R.A. 696, 52 C. C. A. 25, 114 Fed. 77. See also Hoffman v. Maffioli, 104 Wis. 630, 47 L.R.A. 427, 80 N. W. 1032; Weaver v. Burr (Weaver v. Gay) 31 W. Va. 736, 3 L.R.A. 94, 8 S. E. 743; Wardell v. William, 62 Mich. 50, 4 Am. St. Rep. 814, 28 N. W. 796.

On rehearing had, after the former holding of this court that the agreement was nonenforceable because of want of mutuality, respondent's counsel contended that the executory contract, so-called, had become executed, and that inasmuch as the same had been suffered to lapse uncanceled it must be treated as a valid contract. This theory has been adopted in the majority opinion. Let us analyze it. Concede, as must be done under the unanimous holding of authority, that when signed this instrument did not amount to a contract for want of mutuality of consideration. Manifestly lapse of time alone, with no per-

formance, could not of itself remedy a lack of mutuality and so make a contract. But admittedly full performance would cure want of mutuality, and that which had not amounted to an executory contract would be considered as an executed one, and whereas, because of want of mutuality, no obligations had theretofore existed to perform, that defect may be eliminated by performance and the agreement become an executed contract. To what extent has this contract been executed? The answer necessitates a consideration of § 5365, Rev. Codes, 1905, defining executed and executory contracts, in connection with § 5311, further qualifying such statutory definition. The former section reads: "An executed contract is one the object of which is fully performed; all others are executory." The object of contract, within § 5311, is defined to be: "The object of a contract is the thing which it is agreed on the part of the party receiving the consideration to do or not to do." Our statutory definition of executed and executory contracts is identical with and was probably taken from what is now § 1661 of Kerr's Anno. Codes of California. If we treat this agreement as containing both an agency and a sale feature, a contention most favorable to respondent's contention, nevertheless we find that title has not passed to a single automobile or part concerned in such sale feature, and the transfer of title has been held to be the test in California under their Code, § 1661. Until transfer of title of the subject-matter of a contract of sale, the contract remains executory under said section. See Lassing v. James, 107 Cal. 348, 40 Pac. 534; Yukon River S. B. Co. v. Gratto, 136 Cal. 538, 69 Pac. 252; Cardinell v. Bennett, 52 Cal. 476. For the holdings and definitions of executed and executory contracts, see Knudtson v. Robinson, 18 N. D. 12, 118 N. W. 1051; Fox v. Kitton, 19 Ill. 519; Farrington v. Tennessee, 95 U. S. 679, 24 L. ed. 558; Fletcher v. Peck, 6 Cranch, 87–136, 3 L. ed. 162–177; Cincinnati, H. & D. R. Co. v. McKeen, 12 C. C. A. 14, 24 U. S. App. 218, 64 Fed. 36–46; Adams v. Reed, 11 Utah, 480, 40 Pac. 720; State v. Jersey City, 31 N. J. L. 575, 86 Am. Dec. 240; Keokuk v. Ft. Wayne Electric Co. 90 Iowa, 67, 57 N. W. 689; Watson v. Coast, 35 W. Va. 463, 14 S. E. 249. South Dakota, in construing this identical statute in Mettel v. Gales, 12 S. D. 832, 82 N. W. 181, says: "Executed contracts are not properly contracts at all. The term is used to signify rights in property which have been acquired by means of contract. The parties are no

longer bound by a contractual tie." See Words & Phrases, vol. 3, under titles "Executed Contract" and "Executory Contract." It certainly cannot be seriously contended that this so-called contract is other than executory as to the purchase and sale of cars, as not a single car has been ordered or delivered or handled under it. Defendant complains that plaintiff has wholly defaulted in such respect, which alone is wholly inconsistent with a partial or complete performance. As to the agency feature of the purported contract, wherein, as stated in the majority opinion, plaintiff had agreed to "faithfully represent and advertise such automobiles, keep in stock at least one of Interstate manufacturer for the sole purpose of demonstrating and exhibiting to prospective purchasers," etc., as well as the appointment of subagencies mentioned under paragraph one of the agreement, under the evidence the contract is equally totally unperformed. In the majority opinion the injury resulting from this default is made the sole basis for upholding the enforcement of the penalty, on the ground that damages suffered because of such defaults are so "impracticable or extremely difficult" to ascertain and assess, that they may be stipulated to be liquidated under the exception to the general rule for stipulated damages, and under § 5370, Rev. Codes 1905. In other words, if the majority holding is based upon the contract becoming executed by what was done by advertising and soliciting in attempting to carry it out, and in the absence of any sales, and it is conceded that no sales were made, then it is inconsistent with that portion of the main opinion necessary to support the liquidated damage feature, based not on performance, but on default in such respect. To be consistent the opinion throughout must treat this, the agency feature of the contract, as executory or executed,—one or the other. It cannot treat it as it has, as executed, for the purpose of curing a lack of mutuality in contract, and at the same time, as a peg upon which to hand a claim of liquidated damages, find it executory. If executed as to its agency provisions, an utter impossibility, of course, without it being executed as to sales, as one feature cannot be separated from the other, no damage for failure to establish agencies and advertise has accrued, because the agencies must have been established and the advertising must have been done. However, under the evidence and the pleadings as well, the agency feature as well as the sale part of the so-called contract has never in any particular been carried out, un-

less we say that a mere good-faith endeavor, with nothing really accomplished toward actual performance, amounts to a performance, and renders an executory contract executed, and thereby renders what was not a contract, because of want of mutuality, and executed contract, under which the law will measure the rights arising from acts done, not mere promises to perform. It must be conceded that the law is that performance under a unilateral contract can bind for any purpose only to the extent of the performance had. This seems to be the undisputed doctrine of the authorities. Gray v. Hinton, 2 McCrary, 167, 7 Fed. 81; American Refrigerator Transit Co. v. Chilton, 94 Ill. App. 6; Morrow v. Southern Exp. Co. 101 Ga. 810, 28 S. E. 998; Dayton, W. & X. Turnp. Co. v. Coy, 13 Ohio St. 84. In the latter case the party occupying the defendant's position here actually had the equities with him, but the court said, in replying to the same contention here made, that the parties had treated the contract as valid, as follows: "We have been asked by the counsel for the plaintiff if we found there was no mutuality in the contract, still to look at the conduct of the defendant,—his purpose in the execution of the instrument. But we do not see how we can look at the conduct of the defendant with any other view than to ascertain whether he has entered into a contract. In such a case as this it is not our province to decide as to the propriety of the conduct of the party. We have only to inquire whether he has incurred a legal obligation."

That this contract is not executed, but executory, is squarely decided by Knudtson v. Robinson, 18 N. D. 12, 118 N. W. 1051, in an opinion by Judge Morgan, in an action for specific performance where mutuality of contract and alleged performance were presented for determination. It was there contended that by an offer of performance and tender "the nonmutuality of the contract is rendered immaterial." The court held: "Since Robinson could not enforce specific performance against Knudtson under the facts of this case, specific performance could not be enforced by Knudtson against Robinson. There must be mutuality of obligation and remedy between the parties before specific performance is enforceable against either, except in cases where there has been performance by the party seeking to enforce specific performance. . . . 'Performance' is a word of settled meaning, and means the doing or completing of an act; 'an offer to perform' and

'performance' are not synonymous in meaning. Without performance the party seeking the enforcement of the contract is not within the provisions of the statute when he has tendered performance or simply shown a willingness to perform. Crumbly v. Bardon, 70 Wis. 385, 36 N. W. 19; Lattin v. Hazard, 91 Cal. 87, 27 Pac. 515." It is significant that not a single authority is cited on this question in the majority opinion, which does not even discuss the statutory provisions above quoted, but evidently relies wholly upon the effect of a lapse of time with no principle of estoppel involved, making a contract out of something that, up until the last day of the so-called period of time mentioned in the purported agreement, was not a contract, but unenforceable as wholly lacking in mutuality of contract. Reduced to a nut shell, these parties have signed a written instrument, binding neither, granting certain privileges but neither obligating the other, and therein stated that such privileges shall remain, subject to prior arbitrary cancelation, from October 8, 1910, to September 1, 1911. Nothing was done toward performance except useless effort accomplishing nothing toward actual performance. After September 1, 1911, that which was prior to that time merely written permission or privilege, by lapsing and becoming nonexistent, has by something little short of legerdemain ripened into a legal contract. With due respect to the opinion of a majority of my associates, it is impossible for me to see how this result can be achieved under the evidence in this case, and conform to settled principles and fundamentals.

My contentions are summarized into the following statement: When the purported contract is analyzed with reference to these fundamental principles of contract, under all authorities and under the stipulated terms and conditions of the purported contract itself, I can reach no other conclusion than that the written instrument, when executed and delivered, was wholly lacking in mutuality of contract in that no consideration passed, and that no obligations of either party to the other were created, inasmuch as neither party procured under this instrument any legal right, or assumed any legal duty or obligation to the other; that lapse of time alone could not in such respect change the legal status of the parties in the slightest degree, no principle of estoppel being involved; that performance, on the contrary, could bring into existence for the first time between these parties, so far as this instrument is con-

cerned, rights and resulting legal obligations, but only to the extent of performance, partial or full; that a part performance could bind neither party to make full performance, but would obligate the parties so far as rights arose under such part performance, as for example, the delivery was made in good faith by plaintiff to sell cars, with the intent on his order would obligate him to pay for them, but would not obligate him as to any of the remaining 47 cars mentioned in the instrument, and a similar delivery and acceptance of 30 cars would bind the parties to that extent, but no further. But under the evidence as well as the pleadings no performance whatever has been had. Instead, an attempt was made in good faith by plaintiff to sell cars, with the intent on his part that he would perform this so-called contract, and defendant had some cars on hand with which to have filled any order for cars he might have submitted, and no cancelation of the contract was had, but the same permitted by sufferance of the parties to remain uncanceled until it lapsed. Under these circumstances I can conceive of no legal principle which cures the want of mutuality of contract and creates a contract with its resulting obligations. Defendant was never legally bound to deliver cars or do anything else, and plaintiff was never bound to sell cars or do anything else, and hence he was never legally obligated to defendant. With no obligation or right possessed by defendant and owing it by plaintiff, there was nothing to breach upon which damage can be predicated. Under these circumstances the defendant has received from plaintiff this deposit of $1,250, for which he has given no consideration whatever; nor has he parted therefor to plaintiff with anything of value in the eye of the law, nor has he forborne anything because he has not obligated himself to forbear. Instead, he stands before a court shorn of a defense. His purported defense, at the most, epitomized, is equivalent to asserting that in return for this money he merely permitted plaintiff to believe himself possessed of a right to canvass for and perhaps sell cars in certain territory, while in law he never gave him such a right nor parted with such right, and at any time he could defeat plaintiff's attempt at sales, at his whim or caprice, by refusing to deliver the cars plaintiff was attempting to sell. Such an unconscionable plea, which in justice at least should be unavailing, is by the majority opinion upheld, and a forfeiture enforced of what is clearly a penalty. As stated in the opinion, this action for money had

and received possesses equitable characteristics, and to that extent the plaintiff is in a court of equity, a court of conscience, and this as a reviewing court is the same. Would any member of this bench consider it a conscionable transaction with a fellow man to forfeit, or, to use the softer word, retain a like amount of another's money under the same circumstances as disclosed in this record? The answer to this must suffice to establish the forfeit as either conscionable or unconscionable, equitable or inequitable, from the standpoint of which we must view plaintiff's attempted recovery as for money had and received, and alleged to have been received under such circumstances that equity and good conscience should order its return. Fair dealing must not only brand plaintiff's position as conscionable and right, but defendant's as unconscionable, if not worse. Under the law and the fact plaintiff should recover.

BURKE, J. I concur in the foregoing dissent.